16494

### DILLON v. DILLON
(64 S. E. (2d) 649)

Mr. *Richard Earl Dillon,* of Oakland, Cal., *in Propria Persona,* appellant;

*Messrs. Smoak & Smoak,* of Walterboro, for Respondent.

April 23, 1951.

HENDERSON, Acting Associate Justice.

Where parents unfortunately no longer live together the custody of their young children always presents a serious problem to the courts. We have such a case here.

This proceeding in *habeas corpus,* involving the custody of the three children of the petitioner and the respondent, was brought in Colleton County on May 9, 1947, and has taken a long time to reach this Court. The ages of the children are nine, seven and six years. Two are girls, and one is a boy. The parents were married in Baltimore, Maryland, in 1940, and formerly resided at Oakland, California. They

were living in Colleton County when the case was begun. The petitioner contends that he is entitled to the custody of the children on the ground that the mother is an unfit person to have them in charge.

At the commencement of the proceedings, by order of the Court of Common Pleas, the children were taken from the possession of the mother and placed with the Childrens' Bureau. Thereafter, in July, 1947, upon petition of the appellant, the temporary custody of the children was given to him by Judge Johnson, and he was permitted to remove them from the State upon filing a bond in the sum of $1,000-.00, conditioned upon abiding the further order of the Court.

He thereupon took the children to his former home in California, and they have been with him since that time. Although the resident Judge of the circuit, in March, 1948, ordered him to return them to South Carolina, he has failed to do so.

In April, 1949, the case was referred to the Probate Judge acting as Master, and he recommended in his report of December 20, 1949, that the custody of the children be given to the mother. On December 24, 1949, Judge Moss, then presiding at Walterboro, made a decree wherein the custody of the children was placed with the respondent, and it was ordered that if the father desired to see them he should have the right to apply to a Circuit Judge for permission to do so.

It appears in the record that in July, 1935, the mother was adjudged insane and was committed to the state hospital. The superintendent of that institution certified that at the time of her commitment she had epilepsy with progressive mental deterioration. In May, 1947, Dr. Izard Josey gave as his medical opinion that epilepsy, associated with mental deterioration, is incurable, and that a mother so afflicted would be unable satisfactorily to care for her children and that for children to remain in her custody would be detrimental to them. It also appears that she has been

confined in the psychiatric department, of a hospital in Washington three times prior to April, 1939.

It has been shown in the evidence that in March, 1939, the respondent was convicted on four counts of larceny in the municipal court of the District of Columbia.

The evidence further shows that the father of the respondent, with whom she and the children resided, was indicted by the grand jury of Colleton County in April, 1942, for the crime of rape upon a child, and that at the time examining physicians certified to his insanity, this record also showing that an aunt of the respondent had been committed to the state hospital for the insane.

The respondent was later paroled from the state hospital in the custody of her father. When the present proceedings were begun she consented to an examination at the hospital, and the authorities there, on July 12, 1947, reported that she was not insane, and stated that she was capable of caring for her children. The report did not say that she had recovered from epilepsy.

Surely the unfortunate mother should receive no blame for her previous mental illness. Her convictions for stealing took place a long time ago, and she may well have repented and reformed. While it is to be hoped that there will be no recurrence of her deplorable affliction, or any further lapse in moral character, no one of course can see into the future.

It is important to observe that there is nothing in the record showing any unfitness on the part of the father to raise and care for the children. The Master, in his report, found that he was a fit person. There is no evidence before us that the respondent has any earning power; whereas it appears that the appellant is able to provide for the material needs of the children.

If the Court decided the case as a contest between the parents alone, there would be a feeling of pity for the mother, and one of displeasure against the father for dis-

obeying the order of the Court that he return the children to this State. However, that is not the basis upon which such cases are determined.

The law relating to proceedings for the custody of ■ children has been very clearly established by numerous decisions of this Court. While the legal and moral rights of the parents will of course be regarded, the paramount consideration of the Court is the welfare and best interests of the children. *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89, and cases there cited.

What is for the best interest of the children in the present case, to be confided to a father against whom no charges of unfitness have been made, or to a mother whose mental status is unstable, who has no means of earning an adequate support for the children, who at one time had criminal tendencies, and the members of whose immediate family have highly undesirable qualities?

Children should have the love and care of both parents, but if, because of the circumstances, they must be in the custody of only one of them, the Court must decide which is best qualified to promote their welfare. It is impossible in this case, with the parents now living at opposite sides of the continent, to give them divided custody, each a part of the year. No other person appears who is able to care for the children in a proper manner.

There would seem to be but one answer, and that is ■ to give them to the custody of their father.

The mother should have the right to visit her children at all convenient times, and we hope and believe that the courts of California will permit her to do so.

It was the duty of the appellant to return the children to this State in 1948, as ordered by Judge Johnson; and nothing herein contained shall be regarded as condoning his failure to do so, nor as relieving him of a forfeiture of his bond upon due proceedings being brought therefor. Any

resentment against him, however, for his disobedience of the order of the Circuit Court should not cause us to lose sight of our primary consideration in custody proceedings, the welfare of the innocent children.

The decree of Judge Moss is reversed, and the custody of the children is placed in their father, the appellant.

Reversed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.