16731

CUTSHAW *ET AL.* v. HARVEY *ET AL.*
(75 S. E. (2d) 602)

*Mr. Robert J. Gantt,* of Spartanburg, *for Appellants,*

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, *for Respondent, Cherokee County Department of Public Welfare,*

April 13, 1953.

OXNER, Justice.

This case involves the custody of two children, Lillie Virginia Mae Cutshaw and Calvin Junior Cutshaw, who, at the time of the commencement of this action, were approximately six and four years of age, respectively. Their parents appear to have taken little interest in them. Virginia Mae, when about three months old, was placed by her mother in the home of appellants, Calvin C. Cutshaw and Martha S. Cutshaw. Calvin Junior was born in this home. The Cutshaws, who reside in Union County, remained in custody of these children until January, 1951.

On January 1, 1951, after receiving a complaint that a woman, accompanied by a child, was begging on the streets, a rural policeman of Cherokee County found Martha S. Cutshaw, with Virginia Mae walking some distance behind her, in the Alma Mills Village. Mrs. Cutshaw stated to the officer that she was enroute to Charlotte where she hoped to obtain employment. He arrested her for neglect and ill-treatment of the child and after obtaining a warrant, lodged her in the county jail. Virginia Mae was turned over to the Cherokee County Department of Public Welfare. Several days later Mrs. Cutshaw was released on a bond signed by her husband. The following day she went to Asheville, taking Calvin Junior with her.

On January 4, 1951, an affidavit was signed by E. G. Harvey, stating that he was the father of Virginia Mae and Calvin Junior, who were being improperly cared for and ill-treated by Mrs. Cutshaw, and asking that both children be placed in the custody of the Cherokee County Department of Public Welfare. Upon this affidavit, an order, consented

to by E. G. Harvey and Ruth Harvey, the mother of the children, was issued by the Circuit Judge, directing that both children be placed in the care of the Cherokee County Department of Public Welfare, which was authorized to put them in some orphanage or suitable home, and ordering the sheriff to forthwith remove the little boy from the custody of the Cutshaws and turn him over to the Welfare Department. This order was passed without notice to the Cutshaws.

About two weeks later, Mrs. Cutshaw was arrested at a bus station in Asheville, North Carolina. Calvin Junior, who was with her, was taken to Gaffney, South Carolina, and delivered to the Welfare Department. After remaining in the Asheville jail for several days, Mrs. Cutshaw was released.

In February, 1951, the Cutshaws brought this action against the Cherokee County Department of Public Welfare, the two children and the Harveys. After stating in the complaint that the children, who had been given a good home and properly cared for by the plaintiffs, were unlawfully removed from their custody under an order of court issued without their knowledge, it was alleged:

"That plaintiffs submit to this Court the adjudication of the question of whether or not plaintiffs have the right to the custody of the said children, and ask that the whole matter be considered by this Court, and that testimony be taken as to the facts set forth in this complaint, plaintiffs alleging that they are the proper custodians of the said children and have the right under the circumstances to the possession of same."

The Cherokee County Department of Public Welfare filed an answer in which, after denying the material allegations of the complaint, it was alleged that the plaintiffs were not fit and suitable persons to have custody of said children and that said defendant, which had the custody of said children temporarily, intended to place them permanently in some

suitable home or orphanage where they could be cared for properly. The guardian *ad litem* for the minor defendants filed a formal answer. The Harvey defendants, who apparently do not desire the custody of their children, defaulted.

By consent of counsel, the case was referred to the Master for Spartanburg County as special referee. He held a reference on April 24, 1951, at which considerable testimony was taken. A report was filed on July 20, 1951. The Referee stated that the father and mother of these children, E. G. Harvey and Ruth Harvey, who had not lived together for some time, impressed him "as being an irresponsible couple living from pillow to post, and never being able to establish a home nor to become altogether self-sustaining." He further found that when Mrs. Cutshaw was arrested in the Alma Mills Village on January 1, 1951, a very cold day, Virginia Mae was barefooted and Mrs. Cutshaw was "soliciting help from door to door" and using Virginia Mae "to create sympathy and to obtain generous contributions from the neighborhood." He further stated in his report:

"It should be mentioned, too, in this connection, that Mr. and Mrs. Cutshaw were deriving other benefits due to the presence of these children in their home than that obtained in the community of Alma Mills. Each month, they were receiving government assistance in the support of them and that assistance varied according to the number in the family. When a view is taken of all the facts and circumstances, I am of the opinion that these children were being used for the purpose of obtaining these assistance checks. In fact, for some time, they received aid from both North and South Carolina at the same time."

After concluding that the Cutshaws were unfit persons to have custody of said children, the Referee recommended that the complaint be dismissed and that the Cherokee County Department of Public Welfare be directed to find a suitable home for them. This report was confirmed by the Circuit Judge who, in a decree filed December 13, 1951, ordered that the care, custody and control of the children be given

to the Cherokee County Department of Public Welfare, with authority "to place the above named minors in such orphanage or other suitable public or private homes for children as said Department deems best." From this decree, the Cutshaws have appealed.

We shall first consider whether the Court below ■■ erred in refusing to award custody of these children to appellants. The children, although having the surname of Cutshaw, were never adopted by them. In fact, they sought to adopt these children in North Carolina but were unsuccessful. In considering the question of custody, it is well settled that the paramount consideration is the welfare and best interests of the children. *Clardy v. Ford,* 203 S. C. 44, 26 S. E. (2d) 20; *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89; *West v. West,* 208 S. C. 1, 36 S. E. (2d) 856; *Dillon v. Dillon,* 219 S. C. 255, 64 S. E. (2d) 649. The Referee, who has had a long and successful career as Master of Spartanburg County and who had an opportunity of seeing and observing these parties and the witnesses, concluded that appellants were not suitable persons to rear these children. The Circuit Judge reached a similar conclusion. The overwhelming weight of the testimony sustains this concurrent finding of fact. ·

In oral argument distinguished counsel for appellants eloquently and ably discussed the right of a citizen to due process of law and traced the history of the safeguards in our fundamental law for the protection of individual rights from the days of the Magna Charta. He argued with great earnestness that the rights of his clients had been flagrantly violated. It must be conceded that this complaint is not wholly without foundation as to the proceedings had prior to the commencement of this action. These children should not have been summarily removed from the custody of appellants without notice and an opportunity to be heard. Moreover, so far as the record discloses, no effort has been made to bring Mrs. Cutshaw to trial on the criminal charges preferred against her. But we cannot permit these circumstances to

cause us to lose sight of our primary consideration in every custody proceeding, the welfare of innocent children. *Dillon v. Dillon, supra,* 219 S. C. 255, 64 S. E. (2d) 649. In this proceeding all rights of appellants have been fully safe-guarded. They have had a full opportunity of being heard on the question of whether they are suitable and fit persons to rear these children.

Finally, it is contended that the Welfare Department is without statutory authority to assume the care and custody of neglected children. The statute imposes certain duties on the State Department of Public Welfare with reference to the care of dependent and neglected children, sections 71-10 and 71-11 of the 1952 Code, and author-izes the Board to render financial aid to such children. Sections 71-91 to 71-98, inclusive of the 1952 Code. The stat-ute also provides that each county board of public welfare "shall see that all laws are enforced for the protection and welfare of minors and the removal of moral menaces to the young and to safeguard and promote the health, education and general welfare of minors." Section 71-36 of the 1952 Code. Such duties were impliedly recognized by this Court in *Wilson v. Clary,* 212 S. C. 250, 47 S. E. (2d) 618. While the Department of Public Welfare does not have jurisdic-tion of proceedings relating to the custody of minor children, no good reason appears why this agency may not be used by the Court to take charge of neglected children temporarily until a suitable place can be found for them. This is what was done in the instant case. These children were temporarily placed in the care of the Department of Public Welfare and that agency was directed to find a suitable home or orphan-age in which they could be placed. When that has been done, the Welfare Department will report its recommendation to the Court of Common Pleas of Cherokee County and that Court, after proper consideration, will designate a perma-nent custodian of the children.

The order of the Court below, as construed by us, is affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.