17414

James G. SANDERS, Respondent, v. Mrs. Pauline Blanco SANDERS, Appellant

(103 S. E. (2d) 281)

*Messrs. Hayes & Hayes,* and *Simrill & Simrill,* of Rock Hill, *for Appellant,*

*David A. Gaston, Esq.,* of Chester, *for Respondent,*

April 17, 1958.

LEGGE, Justice.

In November, 1950, respondent and appellant entered into a marriage that both believed valid. They have two children, one born before the marriage, the other in 1954. Appellant also has two children by her previous

marriage with one Joseph Bianco, from whom she had obtained a divorce in Alabama prior to her marriage with respondent. In September, 1955, respondent brought this action for annulment of their marriage because of invalidity of the divorce, and for custody of their children. From a decree of the circuit court awarding custody of these children to their mother for the first six months, and to their father for the remainder, of each calendar year, subject to the right of each parent, during the periods in which custody is in the other, to have them on alternate week-ends and on Fridays of other weeks from 3:00 p. m. until sundown, the mother now appeals. By her exceptions she contends:

1. That the trial court erred in not adjudging her said children illegitimate;

2. That, because of their illegitimacy, respondent has no right to their custody; and

3. That since the court found that neither parent was unfit to have such custody, it was error not to hold that the best interest of the children required that she be awarded their complete and permanent custody, subject to reasonable visitation by their father.

The complaint was dated September 27, 1955. The substance of its twelve paragraphs may be briefly summarized as follows:

1. On November 18, 1950, at Chester, S. C., the parties entered into their marriage contract in good faith, both believing it to be valid; and they thereafter lived together as husband and wife.

2, 3, 4, 5 and 6. Plaintiff has learned that their said marriage was bigamous and void for the reason that at the time of said marriage the defendant had a living husband, one Joseph Bianco, from whom she had attempted to obtain a divorce in Alabama, said divorce being void, however, because the necessary residence of the parties in Alabama was lacking and the Alabama court was therefore without jurisdiction.

7. There are two children of the marriage between the plaintiff and the defendant, one a son, aged six years, and the other a daughter, aged seventeen months, both of whom are legitimate by virtue of Section 20-6.1 of the 1952 Code as amended. The defendant has other children of her own, by the name of Bianco, whom she prefers and favors over her children by the plaintiff.

8, 9, 10 and 12. The defendant's conduct toward their children has been such that for their best interests the plaintiff should be given permanent custody of them; and, pending the outcome of the case, she should be restrained from molesting them.

(Paragraph 11 related to determination of the rights of the parties in certain property, not presently involved.)

The prayer was for annulment of the marriage, permanent custody of the children, and a temporary restraining order.

The defendant, answering:

(a) Admitted the allegations of paragraph 1.

(b) As to paragraphs 2, 3, 4, 5 and 6, admitted that she had never resided in Alabama; alleged that she had secured a divorce from her former husband, Bianco, through a lawyer in that state; and that she had been informed and believed that the divorce was valid; and alleged further that she had been "going with" the plaintiff before she secured the divorce, and that he knew how it had been obtained.

(c) Admitted the allegations of paragraph 7, except the allegation that she preferred and favored the two children of her former marriage over those by the plaintiff; and alleged that although her son had been born before her marriage with the plaintiff, the plaintiff was in fact his father.

(d) Denied the allegations of paragraphs 8, 9, 10 and 12, and alleged that the plaintiff was unfit to have custody of the children.

Prayer was for dismissal of the complaint.

We infer from the record that the parties, who have continued to live in Chester, S. C., separated about the time of

the commencement of the action, their children remaining with the defendant in what had been the family home.

Two interlocutory orders for custody were issued by the Honorable Joseph R. Moss, now a member of this court, then resident judge of the sixth circuit. The first, based on the pleadings, was dated November 19, 1955, and ordered that the plaintiff be allowed to see his children during such hours of daylight as would not conflict with their schooling, and to have them on alternate week-ends from noon on Saturday until Sunday evening. The second, on the defendant's motion to revoke the former, was dated February 21, 1956. In it Judge Moss, reciting that the children were admittedly the children of the parties to the cause and in the custody of the defendant, subjecct to the court's further orders, and expressing great concern at the effect that their parents' disagreement and the breaking up of their home life might have upon them, in whose welfare the court was primarily interested, made the hours of visitation specific, as follows:

Plaintiff might have his children on alternate week-ends, commencing February 25, 1956, from noon on Saturday until 6:00 p. m. on Sunday, except that on April 15 and each alternate Sunday thereafter, he might keep them until 7:00 p. m. and give them their evening meal.

During those weeks in which he was to have them on the week-end, he might also have them at such times on Mondays, Wednesdays and Fridays, between 8:00 a. m. and 5:00 p. m., as would not interfere with their schooling.

During those weeks in which he was not to have them on the week-end, he might have them at such times on Mondays, Tuesdays, Thursdays and Fridays, between 8:00 a. m. and 5:00 p. m., as would not interfere with their schooling.

The defendant to have them at all other times.

It appears also that on January 14, 1957, defendant moved before the Honorable J. B. Pruitt, then presiding in the

sixth circuit, for judgment on the verified pleadings, annulling the marriage; and plaintiff moved at the same time for an order declaring the children legitimate. No order appears to have been issued on either motion.

The case then came on for hearing on the merits before Judge Pruitt at the February, 1957, term, at which time testimony on both sides was taken and counsel for both parties were fully heard. Judge Pruitt's decree adjudged the marriage of the parties null and void; and there is no appeal from that ruling. It also provided for division of the custody of the children as hereinbefore mentioned. Concerning such custody, and the question of legitimacy, he said:

"The children are not parties to this proceeding and the Court does not consider it necessary or proper at this time to decide the question of their legitimacy.

"Therefore the sole question to be decided by the Court at this time is the custody of the children.

"Admittedly the parties are the father and mother of both children. As stated by Judge Moss the primary concern is the best interest of the children. I am not convinced from the testimony that either party is an unfit person to have custody of the children. They both want custody of them and both appear to have the love and affection of natural parents for their children as it is right that they should. Unfortunate differences between themselves and animosity against each other appears to be the underlying cause for each desiring to deprive the other of custody. After weighing all the testimony and considering all the facts and circumstances of the 'marriage' and relationship of the parties, I am convinced that it is for the best interest of the children that they have the benefit of the love, affection and care of both their parents. Furthermore, the children should not be separated from each other for any great length of time and their schooling and lesson preparations and study should not be interrupted.

"The present arrangement of division of time between the parties for short periods with frequent changes and hours

of visitation was no doubt advisable during the first months after the disruption and disagreement between the parents. As the children grow older they should become more accustomed to being separated from one or the other of their parents from time to time. To remain with either parent and away from the other for longer periods should interfere less with the normal course and development of their lives. Both parents should realize and be ever mindful of the difficulty which their differences cause for their children, and should make every effort to minimize the effect upon the children's lives by not displaying before the children their animosity and feeling against each other. Each parent should encourage the love and affection of the children for the other parent that they may have greater respect and honor for both of their parents and a better chance to develop normal lives.

"This court has and shall maintain a continuing jurisdiction of this cause and the parties hereto as to custody, maintenance and support; and the children shall remain in and not be moved without the jurisdiction of this court."

There is no issue of legitimacy under the pleadings. Illegitimacy is not alleged in either the complaint or the answer. And the allegation in paragraph 7 of the complaint that the children are legitimate by virtue of Section 20-6.1 as amended states merely the pleader's conclusion of law; its admission in the answer is as ineffectual as its allegation in the complaint.

Appellant urges that even though the pleadings did not raise the issue of legitimacy determination of that question was essential to the trial court's disposition of the issue of custody. We do not think so.

It is said to be universally recognized that the mother of an illegitimate child, as its natural guardian, has a legal right to its custody superior to that of its father, unless she be adjudged unfit to have such custody. 7 Am. Jur., Bastards, Section 61, page 668; 10 C. J. S. Bas-

tards § 17 b, page 80; Annotations, 65 L. R. A. 689 *et seq.*, 51 A. L. R. 1507 *et seq.*, 37 A. L. R. (2d) 882 *et seq.;* and see *King v. Johnson,* 2 Hill Eq. 624, 11 S. C. Eq. 624, where it was so stated by way of dictum. The rule had its origin in the common law of England, and among the reasons that have been assigned for it are: (1) that the mother is the only parent as to whose identity there can be no doubt; (2) that the legal obligation to maintain the child is primarily hers; and (3) that her natural love for the child is probably greater than its father's. 7 Am. Jur., Bastards, Section 61, page 668. But these reasons are not impressive where the child was born in wedlock entered into by both parents in good faith and belief in its legality, but that has proven invalid because of a jurisdictional defect in a former divorce proceeding. In many states legitimating statutes obviate the rule in such circumstances. But the matter is never of primary concern, for whatever may be mother's legal right, it is not absolute or controlling. The dominant consideration is always the welfare of the child. 7 Am. Jur., Bastards, Section 60, page 668. "It is the benefit and welfare of the bastard to which the attention of the court ought principally to be directed. This, it is said, is the 'pole star' by which courts are guided in all such cases, whether the contention is between father and mother, or between them and a third person, or between strangers." *Ibid.,* Section 65, page 671; and compare *Jennings v. Anderson,* 114 S. C. 506, 104 S. E. 189. Technical legal rights of the parties must yield to the well-being of the child. The rule in this state has long been settled that the paramount consideration that must govern the award of custody of a child is its welfare and best interests. *Clardy v. Ford,* 203 S. C. 44, 26 S. E. (2d) 20; *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89; *West v. West,* 208 S. C. 1, 36 S. E. (2d) 856; *Dillon v. Dillon,* 219 S. C. 255, 64 S. E. (2d) 649; *Cutshaw v. Harvey,* 223 S. C. 276, 75 S. E. (2d) 602; *Wiliams v. Rogers,* 224 S. C. 425, 79 S. E. (2d) 464. The court is concerned for the well-being of illegitimate children, no less than that of those more fortunate.

It is thus apparent that in the case at bar adjudication of legitimacy *vel non* would have been both improper and unnecessary; improper, because the pleadings raised no issue thereabout; unnecessary, because it is the child's welfare, not its legitimacy or illegitimacy, that is the concern of the court.

The trial judge, who saw and heard the parties and their witnesses, concluded that neither parent was unfit to have the custody of their children; that both loved them and wanted to have their custody and care; and that it would be in the children's best interest that they should continue, through division of custody, to have the love and care of both their parents. Of these conclusions appellant challenges only the last, and that because, as she says, divided custody will not be as good for the children as a permanent home with her would be. Divided custody is probably not the perfect solution, for problems of this kind are rarely if ever susceptible of perfect solution; but in the circumstances of the instant case it seems the best one possible from the standpoint of the children's welfare. Decision was within the judicial discretion, *Koon v. Koon, supra;* and certainly we cannot say from the record before us, which contains none of the testimony, that the trial judge abused that discretion.

We speak from the bench, not the pulpit; but we are moved, nevertheless, to say that had the love of these parents for their children been less selfish and more considerate, this unhappy proceeding would never have been before us. As Judge Pruitt pointed out, and as the pleadings suggest, it was occasioned by their own discord, and the possible invalidity of the Alabama divorce was an afterthought. Granted that both respondent and appellant believed, when they married, that the latter was free to do so, they both should have made very sure that such was the case. Respondent does not deny that he knew before their marriage, that a divorce proceeding was pending in Alabama between appellant and her then husband; nor does the record show any denial on his part of knowledge that she, the plaintiff in

that proceeding, had never resided in that state. In the face of common knowledge that jurisdiction of the parties is essential to the validity of any decree of divorce, he was under duty at least to inquire as to whether the Alabama law had been complied with. Parenthood, no less than matrimony, in reliance upon a foreign divorce, is an estate "not by any to be entered into unadvisedly or lightly." Here the parties entered into it with at least constructive knowledge that the Alabama divorce was questionable. For the sake of their children they, of all the world, should have been the last to question it. If respondent had cause to believe appellant's conduct such as to justify his leaving her and demanding custody of them, he could and should have done so without exhuming the record of her divorce. Otherwise, he should have borne the burden of his marital contract at whatever cost, for his children's sake. The family structure of these people has now been wrecked. Whether it can ever be wholly restored is not for us to say. But Judge Pruitt's decree sheds a ray of hope upon the future relationship between these parents and their children. Obedience to that decree, and patience and charity toward each other and toward them, may yet bring to the latter happy and normal development, and to the former a more satisfying parenthood than they have heretofore known.

Affirmed.

STUKES, C. J., TAYLOR and OXNER, JJ., and J. ROBERT MARTIN, JR., A. A. J., concur.