16635

## HOPKINS v. DERST BAKING CO. *ET AL.*
(71 S. E. (2d) 407)

498

*Messrs. Moore & Mouzon,* of Charleston, *for Appellants,* cite:

*Messrs. Thos. P. Bussey* and *Robert B. Stall, Jr.,* of Charleston, and *Colley & Orr,* of Washington, Georgia, *for Respondent,* cite:

June 6, 1952.

TAYLOR, Justice.

Respondent's intestate, a child of two years of age, was run over and killed by a truck belonging to the Derst Baking Company, and driven by its employee Marvin Brodie.

Upon trial of the case in the Court of Common Pleas of Charleston County, the jury found for the plaintiff in the sum of $22,500.00 actual damages.

At the close of plaintiff's testimony, appellants moved for a nonsuit upon the grounds that there was no evidence of negligence on the part of appellants and at the close of all testimony, motion was made for a directed verdict upon the same grounds. Both of which were denied by the presiding judge. Motion for a new trial was duly made which was also refused and appellants now come to this Court contending that there was error: First, in submitting to the jury the issue of punitive damages after having previously announced otherwise. Second that the verdict was so grossly excessive as to indicate passion, prejudice, or caprice. Third, that there was error in denying appellant's motion for a nonsuit and directed verdict in that there was no evidence of actionable negligence.

First we will consider the question of whether there was sufficient evidence of negligence to require the case being submitted to the jury bearing in mind that the evidence must be considered in the light most favorable to the plaintiff. The testimony and all inferences from it must be taken most strongly against the defendant and if there be any testimony tending to prove any one or more of the specifications of negligence, motion for a nonsuit should be refused. *Sturdyvin v. Atlantic & C. A. L. R. Co.,*

98 S. C. 125, 82 S. E. 275; *Montgomery v. National Comvoy & Trucking Co.,* 186 S. C. 167, 195 S. E. 247; *Jones v. American Fidelity & Casualty Co.,* 210 S. C. 470, 43 S. E. (2d) 355; *Mullinax v. Great Atlantic & Pacific Tea Co.,* S. C., 70 S. E. (2d) 911.

The incident which resulted in the death of David Carol Hopkins occurred on February 10, 1950, on Hackerman Avenue, which is a thickly populated residential suburb of the city of Charleston, near the city limits. At approximately 10:30 on this Friday morning the appellant, Marvin Brodie, while employed by and driving one of Derst Baking Company's delivery trucks, parked his truck on the south side of said street and left same by way of the right door for the purpose of making delivery to a rolling store operated from Number 1917. Upon learning that Mr. Kosack who operated the rolling store had already begun canvassing the neighborhood, he noticed that groceries were being delivered to a store building across the street which had been closed for some time. He proceeded to solicit this business for his employer and returned to the truck from its left side, entering on the driver's side.

The testimony as to just where this truck was parked is in considerable dispute. The paving was 18 feet wide with a 20 foot base which extended approximately one foot on each side. There were no paved sidewalks and no fences around the houses. The rest is dirt and grass with what was termed a "valley gutter" for drainage purposes. The area between the pavement and the property lines was approximately 11 feet wide with the valley gutter approximately in the center of this area. The testimony of the position of the parked truck ranges all the way from the left wheels being on the pavement to being completely across the valley gutter, from in front of Number 1917 to being in front of Number 1915 where the Hopkins family lived.

There is no evidence of the body of the child having been dragged which according to some testimony was found

seven to nine feet south of the pavement and there is other evidence from which the jury might infer that the body was 12 to 15 feet from where the truck had been parked. None of the witnesses testified to having seen the child. The driver stated that he returned to the truck, entered from the driver's side, did not see the child, observing that the street was clear of traffic, he proceeded to pull off and was not aware of the tragedy until a Mr. Clark waved him to stop, that he was still in first gear and stopped immediately and learned for the first time that the child had been run over. One of the investigating officers testified that Brodie told him that he felt both right wheels pass over something but he thought it to be the water meter (which the plat shows to be in front of Number 1915). Mr. Clark testified that he was expecting the mailman, that although he saw Mr. Brodie and the truck, he was looking in the opposite direction at the moment of impact and did not see the child. Mrs. Britt testified that a short while after the driver entered the truck she "heard the crash" and knew something had happened although she did not see the child. Another witness described the noise as a "bump". Another witness testified that he was in position to see the front of the truck and saw no child there. This latter testimony together with that of the driver is relied upon by the appellants to support its theory that the child had crawled under the truck while respondent contends that the driver pulled off while looking back making his observations as to possible oncoming traffic from the rear.

It is not necessary that direct and positive evidence of eyewitnesses be introduced in order to show negligence as this may be done by circumstances surrounding the accident.

"The law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eyewitnesses. Proof of the fact of negligence may rest entirely in circumstances; in other words, circumstantial evidence alone

may authorize a finding of negligence. Hence, negligence may be inferred from all the facts and attendant circumstances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts, a prima facie case is made." 38 Am. Jur., sec. 333, page 1032.

38 Am. Jur., sec. 334, page 1033, "In accord with the rule governing proof of negligence generally, proximate cause need not be established by the testimony of eyewitnesses nor by direct or positive evidence, but may be proved by circumstantial evidence; it may be determined from the circumstances of the case." See also, *Eickhoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010.

In the instant case, the testimony is at variance as so often happens in cases of this kind. The only witness who attempted to place the child under the truck was the appellant Brodie who did so by way of deduction—giving this as his reason for failing to see the child. Some witnesses placed the body 12 to 15 feet in front of where the driver said he parked, while others did not agree. The location of the tragedy was very material as it had a bearing on whether or not the child was in front of the truck and therefore should have been seen, or was under the truck as contended by appellants. In view of this conflicting evidence, it was incumbent upon the trial judge to submit the case to the jury for its consideration and we find no error in the following statement made in denying appellants' motions:

"It is sufficient to say that there was abundant evidence from which the jury could have drawn the reasonable inference that the death of the plaintiff's intestate was due to an act or acts of carelessness or negligence on the part of the defendants as the sole proximate cause thereof." And we find no error therein.

Appellants also contend it was error to submit the issue of punitive damage to the jury. After hearing appellants' motion for a directed verdict upon the grounds that there

was no evidence of negligence to submit to the jury, the trial judge overruled same and in doing so stated that he was not going to submit the question of wilfulness and wantonness to the jury. Respondent's counsel asked for and obtained leave to submit authorities on this question before final ruling was made and Court was adjourned until the following morning. Upon reconvening of the Court the next morning, the Presiding Judge stated, "The issue of negligence and willfulness, of course, will be submitted to the jury." And subsequently did charge the jury along this line.

After the jury had been out for approximately one hour, it returned and asked for and received further instruction as to punitive damages. The foreman stated, "We want you to restate the difference between actual damages and punitive damages, and whether we could bring in a verdict on one and not on the other." Approximately one and a half hours later they returned and reported they were unable to reach a verdict. The Court thereupon instructed them upon the desirability of reaching a verdict if possible, Whereupon they returned to the jury room and approximately fifteen minutes later reported a verdict of $22,500.00 actual damages in favor of respondent and a specific finding that the mother of plaintiff's intestate was not barred of recovery by reason of any contributory negligence on her part.

When the trial judge announced to counsel that he would submit to the jury the question of punitive damages there was no request on the part of appellants to be heard. It appears that discussions with reference to this centered around whether or not there had been a violation of certain statutes pertaining to sidewalks which respondent's counsel contended were applicable to the facts of this case. His Honor ruled that such statutes were not applicable to the facts of this case but stated in his Order denying appellants' motion for a new trial that inferences might be reasonably drawn from the evidence that defendants had committed act or acts which were reasonably susceptible of an inference of willfulness on the part of appellants. There was no verdict

for punitive damages which tends to negate appellants' contention that the jury was influenced by what transpired to their prejudice. They cite no authority to sustain this position and we know of none. This question is therefore resolved against appellants.

■ Appellants' contention that the verdict was excessive cannot be sustained. This was fully discussed in the comparatively recent cases of *Jennings v. McCowan*, 215 S. C. 404, 55 S. E. (2d) 522; and *Bowers v. Charleston & W. C. R. Co.*, 210 S. C. 367, 42 S. E. (2d) 705. For the reasons stated therein, this question is also resolved against appellants.

We are of the opinion that the judgment and verdict appealed from should be affirmed and it is so ordered.

FISHBURNE, STUKES and OXNER, JJ., concur.