16733

MORROW v. EVANS

(75 S. E. (2d) 598)

Messrs. *N. A. Turner,* of Columbia, *Gregory & Gregory,* of Lancaster, and *Smathers & Carpenter,* of Charlotte, N. C., *for Appellant,*

*Messrs. Williams & Parler,* of Lancaster, and *Hudson & Hudson,* of Salisbury, N. C., *for Respondent,*

April 14, 1953.

STUKES, Justice.

In this action for $50,000.00 damages for wrongful death the verdict was for the plaintiff, now respondent, for $5,000-

.00 actual damages and $15,000.00 punitive damages, which the trial judge refused to set aside or reduce on motion for judgment *non obstante veredicto* or, in the alternative, for new trial.

The deceased was a young Air Force Sergeant, stationed at Shaw Field, which is near Sumter. About five o'clock A. M. in the pre-dawn darkness of February 11, 1950, he was traveling alone in a Studebaker passenger automobile South on U. S. Highway 521 about seven miles North of the city of Lancaster when he was in collision on a bridge with appellant's Diesel truck-trailer, which was loaded with eight hundred crates of Florida tangerines. It was driven by appellant's employee, Hawkins, and in the cab with him was a hitch-hiker, Noel, who was picked up at Brunswick, Georgia, on the evening before. Although he had stopped for that and to rest and nap en route, he had covered about 270 miles in the seven hours immediately preceding the collision, according to his statement to the investigating patrolman. On the route were Savannah, Columbia, Lancaster and other cities, towns and villages, passage through which reduced his average speed.

The truck-trailer was 45 feet, seven inches, in overall length. The truck or tractor was 80 inches wide at the front wheels, 92 inches at its rear wheels, and the trailer was 96 inches, or eight feet, wide. The bridge, which has since been widened, was then 18 feet wide between curbs so that the trailer, to stay on its half of the bridge, had only 12 inches to spare. The darkness and the admitted speed of the heavy vehicle naturally added to the difficulty.

The truck approached the bridge downgrade and the driver testified that his speed was from 45 to 50 miles per hour. Before entering the bridge he saw the lights of decedent's approaching automobile. It appears that the collision occurred about 36 feet from the South end of the bridge which was 110 feet in length, from which it may be concluded that the automobile first entered the bridge and the truck-trailer, because of its great length, was not even com-

pletely on it when the collision occurred. That was the effect of the statement of the truck-driver to the patrolman who first reached the scene, as follows: "I asked him what happened and he said that he came over this hill approaching this bridge and was driving approximately 45 to 50 miles an hour, and he saw this car coming across the bridge and he had entered the bridge—just entered the bridge when he collided."

There was a highway sign, "Narrow Bridge", which warned of the danger, and the truck-driver was familiar with it, having traveled the route many times before. The left front wheels of both vehicles were crushed but it appeared from the wreckage that the brunt of the blow was taken by the automobile on its side; it crashed the side rail of the bridge, opposite or near the point of impact, but did not go through it. The truck continued across the bridge, veered left across the highway beyond, went through a guard rail and turned over at the foot of the fill at a distance of about 250 feet from the point of collision. The automobile also cleared the bridge in its direction but traveled after the collision a little less than 100 feet and came to rest on the highway, turned to its left so that it had to be pushed to the right to clear the opposite traffic lane. The decedent received head injuries, which rendered him unconscious and caused his death a few hours later in the Lancaster hospital where he was taken by the first passing vehicle.

The accident was investigated by a State Highway patrolman who testified, as did two other patrolmen.

The testimony which was directed to determination of the proximate cause of the collision related in the main to whether it occurred on the center line, which was marked, or on the automobile's side of the narrow bridge. Respondent and appellant produced witnesses who testified to scars and marks on the surface of the bridge, some of which they said resulted from the wreck. There was positive testimony to the effect that these markings indicated that the collision occurred on the automobile's side, from which it is inferable

that the truck was across the center line at the time of the collision. The driver of it testified to the contrary and the hitch-hiker, riding on the driver's right, said that the truck was as near the bridge rail and curb as it reasonably or "likely" should have been, but he could not say on which side of the center line the collision occurred. Numerous pictures of the bridge, made soon after the accident, were introduced. Two offered by respondent showed pockets on the center line which it was inferred were made by the iron spokes of the damaged left-front wheel of the truck. If that wheel was on the exact center of the bridge and following a straight course, the rear dual wheels and body of the truck and trailer were, of course, projected across the center and into the lane of approaching traffic. Moreover, it is the duty of the driver of a passing vehicle to keep all of it to his right of the center line and none on it. All of the evidence thereabout undoubtedly made an issue for the jury and it cannot be said that their verdict in favor of respondent was not reasonably supported by evidence which tended to prove fault in this particular in the operation of the truck. In addition, whether the speed with which the truck was attempted to be driven upon the dangerously narrow bridge, with the lights of decedent's approaching car visible beforehand to the driver, as he testified they were, constituted negligence, recklessness and wilfulness, was also an issue for the jury. Consideration of all of the evidence is convincing that the car was well on the bridge, indeed almost across, when the truck entered it. According to the testimony of the driver himself, he did not apply his brakes until the moment of the collision.

At the close of the evidence appellant moved for the direction of verdict in his favor but did not include as a ground contributory negligence of the decedent, which was pleaded in the answer. It, therefore, goes out of the case on appeal. Circuit Court Rule 76. *Hill v. Broad River Power Co.,* 151 S. C. 280, 148 S. E. 870; *Mize v. Blue Ridge Ry. Co.,* 219 S. C. 119, 64 S. E. (2d) 253. The

substance of the motion was that respondent had failed to adduce evidence of negligence or wilfulness of appellant's driver which was the proximate cause of the death of respondent's intestate. Enough of the evidence has been stated to show that there was no error in the submission to the jury of the issues of causative negligence and wilfulness—and resulting actual and punitive damages. The violations of at least two statutory provisions were indicated by the evidence, namely, excessive speed of the truck under the circumstances and traveling on the wrong side of the highway (bridge). 4 Code of 1952, p. 969 *et seq.*, sec. 46-361 *et seq.*, which are provisions of the Motor Vehicle Act of 1949, 46 Stat. 466, of force at the time of this accident.

Causative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness, wilfulness and wantonness. *Lumpkin v. Mankin,* 136 S. C. 506, 134 S. E. 503; *Ralls v. Saleeby,* 178 S. C. 431, 182 S. E. 750; *Vernon v. Atlantic Coast Line R. Co.,* 221 S. C. 376, 70 S. E. (2d) 862. There is no exception to the court's charge to the jury in the trial of the case and it is not contained in the appeal record; it will therefore be presumed to have contained instructions pertinent to these principles and to have been free from prejudicial error.

Appellant argues the applicability of *Leek v. New South Express Lines,* 192 S. C. 527, 7 S. E. (2d) 459, 462, but the facts differentiate it. There the collision occurred on the open road with pavement twenty feet in width and the usual earth shoulders. Tracks of the plaintiff's vehicle were not found; those of the defendant's truck showed it to have been well on its side. Practically the only evidence favorable to plaintiff's contention that the collision occurred on defendant's left of the road was the finding of debris there, which was held to be of no probative value in view of the other facts. Incidentally, in the case in hand there is no evidence of the location of the debris which resulted from the collision; it must have been removed from the bridge before the arrival of the patrolmen and other disinterested witnesses

who testified. The truck-driver and his hitch-hiker made no mention of it in their testimony. Applicable for affirmance of the judgment under review is the following from the opinion in the *Leek case*:

"The rule of criminal law that where circumstantial evidence is relied upon, the facts proved must be such as to preclude every other hypothesis but the guilt of the accused, does not apply in civil cases. In civil actions every other reasonable conclusion need not be excluded; proof of circumstances warranting a given inference is sufficient in such cases. Annotation, 97 Am. St. Rep. 802. The right to recover on circumstantial evidence for death resulting from another's negligence depends upon the reasonable and logical connection such proof establishes between the death and the negligent act alleged to have caused it. It is incumbent upon the plaintiff, in the absence of direct evidence, to show the existence of such circumstances as would justify the inference that the injury which caused the death was due to the wrongful act of the defendant, and not leave the question to mere speculation or conjecture. The facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates." (Citing authorities.)

A more recent authority upon the sufficiency of circumstantial evidence in civil actions is *Hopkins v. Derst Baking Co.*, 221 S. C. 497, 71 S. E. (2d) 407, in which there was affirmed judgment for $22,500.00 damages for the wrongful death of a two-year old infant. The circumstantial evidence which tended to prove liability overcame, in the view of the jury, the conflicting testimony of the truck-driver, as here.

The foregoing discussion and conclusions require adverse answers to all of appellant's questions on appeal except that numbered 2 which remains for consideration. It is stated in the brief as follows: "Is the punitive damages portion of the verdict excessive?" It may be con-

ceded that in the view of this court it is excessive in the sense that it is unduly liberal but that is an insufficient ground for reversal on appeal. Remedy lay within the power of the trial judge who, after consideration and in his discretion, declined to interfere, which is ordinarily, as here, final. The subject has been so fully discussed in several recent decisions that it need not be now dwelt upon. *Bowers v. Charleston & W. C. R. Co.,* 210 S. C. 367, 42 S. E. (2d) 705; *Jennings v. Mc-Cowan,* 215 S. C. 404, 55 S. E. (2d) 522; *Richardson v. General Motors Acceptance Corp.,* 221 S. C. 14, 15, 68 S. E. (2d) 874; *Vernon v. Atlantic Coast Line Ry. Co.,* 221 S. C. 376, 70 S. E. (2d) 862.

The verdict was manifestly a considered one. The deceased was a young, unmarried man, survived by his parents, for whose benefit the action was brought; and there was no evidence that either of them was dependent upon him for support. Doubtless for that reason the jury awarded a comparatively small amount of actual damages. On the other hand, the wanton wrong found by the jury to have been committed was a very serious one, and of tragic and irreparable result, on which account the jury awarded a relatively large amount of punitive damages as punishment of the appellant and for an example to others. Effort to deter reckless driving upon the highways, with the resulting heavy loss of human lives, is quite understandable. Prejudice and caprice are not apparent upon the record.

Some of our previous decisions concerning the amounts of punitive damage verdicts are collected in 8 West's South Carolina Digest 47, Damages, Par. 94. Comparison of them and other cited hereinabove with this, constrains us to overrule the present appeal in the absence of any showing thereabout except the amount of the verdict and that appellant is a small operator in the trucking business. There was no proof of his financial worth.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.