17411

Mary W. SMITH, Administratrix of the Estate of Claud C. Smith, Deceased, Respondent, v. Charles E. LYNCH, Administrator C. T. A. of the Estate of Ethel Mae Kelley, Deceased and One 1953 4-Door Cadillac Automobile bearing 1955 Maryland License Plates DA 2061, Appellants.

(103 S. E. (2d) 54)

*Messrs. Jefferies, McLeod, Unger & Fraser,* of Walter-boro, *for Appellants,*

*Messrs. I. A. Smoak, Jr.,* of Walterboro, *Dowling & Dowling,* of Beaufort, and *Randolph Murdaugh,* of Hampton, *for Respondent,*

April 10, 1958.

LEGGE, Justice.

In this action for wrongful death resulting from collision, at the intersection of two paved highways, between a Plymouth station wagon driven by plaintiff's intestate and a Cadillac automobile driven by defendant's intestate, verdict was for the plaintiff in the sum of $45,000.00 actual, and $500.00 punitive, damages. The appeal charges error on the part of the trial judge in his denial of motions for nonsuit, for direction of verdict, and for judgment *n. o. v.* or, in the alternative, new trial.

The accident occurred about 7:55 a. m. on February 8, 1955, at Bell's Cross Roads, the intersection of U. S. Highway No. 21 and State Highway No. 64, in Colleton County. Highway 21 runs north-south; Highway 64, east-west. Both are paved, eighteen feet wide, and marked with center lines. The weather was clear and the pavement dry. The Plymouth was traveling northward on Highway 21; the Cadillac, westward on Highway 64. They collided approximately at the center of the intersection, the front of the Plymouth striking the left front door of the Cadillac.

At the southeast corner of the intersection, just beyond a cleared "sight area", is Herndon's combination service station and grocery. On the south side of Highway 64, some 350-400 feet east of the intersection, is a service station and store that at the time of the accident was operated by a Mr. Carter, now deceased.

Traffic on Highway 64 is required to stop before entering its intersection with Highway 21. For traffic westbound on Highway 64 approaching the intersection there are the following signs, in the order named: (1) at a point 580 feet east of the intersection, "Stop Ahead'"; (2) a sign bearing the name "Bell's Cross Roads"; (3) a sign indicating junction with Highway 21; (4) "Stop". For traffic northbound on Highway 21 approaching the intersection, there are: (1) a sign bearing the name "Bell's Cross Roads"; and (2) a sign indicating junction with Highway 64.

Respondent's intestate, Claud C. Smith, was alone in the Plymouth station wagon, which, as before stated, was traveling northward on Highway 21. In the Cadillac, which was traveling westward on Highway 64, were two ladies. Mrs. Ethel Mae Kelley, of Ocean City, Maryland, was driving; Miss Lillias Cropper, of Washington, D. C., was in the car with her. Of the occupants of both cars, Miss Cropper was the sole survivor. Mr. Smith was instantly killed; Mrs. Kelley died three days later of injuries sustained in the collision.

The facts before stated are undisputed. We proceed, then to consider the issues raised by the exceptions, to wit:

1. Was there sufficient evidence of actionable negligence on the part of appellant's intestate to take that issue to the jury?

2. Was there sufficient evidence of recklessness or willfullness on the part of appellant's intestate to take that issue to the jury?

3. Did the evidence require the conclusion, as a matter of law, that respondent's intestate was guilty of contributory negligence or of contributory willfullness?

4. Is the verdict so grossly excessive as to require this court to set it aside?

Francis Spell, a salesman, testified that on the morning in question he was at Carter's store, and that, having finished transacting his business, he was standing at the front of the store, inside, talking with Mr. Carter, when a black car (that later proved to be the one driven by Mrs. Kelley) passed the store, traveling toward the intersection. As a result of a remark by Mr. Carter, Spell looked in the direction of Bell's Cross Roads and caught a glimpse of the car again, about half-way between Carter's store and Bell's Cross Roads. Its speed, which he estimated at between 50 and 60 miles per hour, did not appear to decrease as it approached the intersection; and he saw no tail light go on. He did not see the Plymouth approaching the intersection, his view of Highway 21 being obstructed by Herndon's store; but he saw the collision at the intersection and thereupon went to the scene, where he found Mr. Smith and Mrs. Kelley lying on the pavement. Spell was unable to state the positions of the two vehicles, but recalled that the Cadillac appeared to have been struck on the left door, and that the motor of the Plymouth had been knocked out and was lying in the road. He saw no marks on the pavement indicating that brakes had been applied on either car. Under cross examination, he stated that he did not remember, but would not deny, having told the defendant Lynch, a few days after the accident, that he had not actually seen the collision.

Highway Patrolman J. R. Grooms went to the scene shortly after the accident happened. From the marks on the pavement it appeared that the point of collision was about two feet northeast of the center of the intersection. From that point the Cadillac had slid northeastward a distance of approximately 105 feet and had come to rest headed east; and the Plymouth had slid, in the same direction, approximately 39 feet, and was headed west. The Cadillac appeared to have been struck on the left side by the front of the Plymouth. The motor of the Plymouth was lying on the pave-

ment. There were no marks on the pavement indicating that brakes had been applied on either car.

Mr. Felix Herndon, the operator of the store at the southeast corner of the intersection, testified as follows: Immediately before the accident, he was in the store, standing at the front door, the upper part of which is of glass, and on both sides of which are large plate glass windows. Through the window at his left he saw the Plymouth approaching the intersection, "and in a split second I looked and saw the Cadillac". He estimated the speed of the Cadillac, as it approached and entered the intersection, at between 65 and 70 miles per hour; and that of the Plymouth at between 55 and 65. As far as he could tell, the Plymouth did not swerve, but was proceeding straight through the intersection when the collision took place. He went to the scene of the accident immediately, saw that Mr. Smith was apparently dead, and then: "I immediately went on to Mrs. Kelley and she asked me what did she do wrong, and I told her she ran a stop sign, and she said, 'Lord help me, I did not see it', and that was the last thing she said to me". He saw no marks on the pavement indicating that brakes had been applied to either car.

Miss Cropper was the only defense witness as to how the accident occurred. The substance of her testimony follows: Mrs. Kelley, who was about fifty-six years of age, and whose husband was Miss Cropper's cousin, occasionally took Miss Cropper with her on trips to Florida. On this occasion they had been in Miami and were returning homeward. The night of February 7 they had spent in Walterboro, and it was their intention to go to Charleston the next morning; but they had gone out of Walterboro westward, instead of eastward as they should have, on Highway 64. They did not realize their error at first, and Miss Cropper was looking at the road map to see where Highway 64 would take them. As they approached Highway 21 they slowed down "to see the signs on either side, to see the names of the towns to see if it would help us, and at that moment we were struck

by the car in the accident". Both she and Mrs. Kelley were thrown from their car. She crawled to where Mrs. Kelley was lying and Mrs. Kelley asked her what had happened. Miss Cropper estimated the average speed at which they had been traveling that morning at between 45 and 55 miles per hour, but could not say how fast they were going when they passed the stop sign at the intersection. Under cross-examination she testified that she was looking at the map and did not see the intersection or the stop signs; and that apparently Mrs. Kelley, who was driving, did not see either the stop signs or the approaching Plymouth.

It is uncontradicted that Mrs. Kelley, driving the Cadillac, failed to stop before entering the intersection of a "through highway", in violation of Section 46-423 of the 1952 Code. According to Mr. Herndon's testimony, she was, just before and at the time of entering the intersection, driving at a speed in violation of Sections 46-361 *et seq.* These statutory violations, if the proximate cause of the collision, would justify punitive as well as actual damages. *Morrow v. Evans,* 223 S. C. 288, 75 S. E. (2d) 598.

In our opinion the evidence, as before reviewed, would have amply warranted the conclusion of negligence, and of recklessness as well, on the part of both drivers. *Geiger v. Checker Cab Co.,* 229 S. C. 39, 91 S. E. (2d) 552. But we think that under it the issue of whether the collision was proximately caused by the negligence or recklessness of appellant's intestate, or by the contributory negligence or recklessness of respondent's intestate, was clearly for determination by the jury. *Howle v. Woods,* 231 S. C. 75, 97 S. E. (2d) 205; *Woods v. Wilhelm,* 232 S. C. 108, 101 S. E. (2d) 252.

We are unable to agree with the contention that the verdict was so grossly excessive as to require reversal. Respondent's intestate was sixty-two years of age and in good health at the time of the accident. His life expectancy was 13.27 years. His business was real estate and insurance and the management of two apartment pro-

jects; and, according to the evidence, his earnings during the last five years of his life had averaged about $10,000.00 per year. Against this background the verdict does not appear of such size as to indicate that it was the result of passion, prejudice or other improper considerations not founded on the evidence and the instructions of the trial court. *Nelson v. Charleston & W. C. Ry. Co.*, 226 S. C. 516, 86 S. E. (2d) 56.

Affirmed.

STUKES, C. J. and TAYLOR, OXNER and MOSS, JJ., concur.