## 18288

John C. SINGLETON, as Administrator of the Estate of J. C. Singleton, Jr., Respondent, v. Freddie W. HUGHES, Appellant

(139 S. E. (2d) 747)

170

*Messrs. Burroughs & Green,* of Conway, *for Appellant,*

*Messrs. J. Reuben Long* and *J. M. Long, Jr.,* of Conway,
*for Respondent,*

January 4, 1965.

Moss, Justice.

This action was instituted by John C. Singleton, as Administrator of the Estate of J. C. Singleton, Jr., deceased, the respondent herein, against Freddie W. Hughes, the appellant herein, to recover damages for the wrongful death of J. C. Singleton, Jr. The action was brought pursuant to Section 10-1951 *et seq.,* 1962 Code of Laws, for the benefit of the parents of the said deceased, they being the beneficiaries under the aforesaid statute.

The complaint alleges that on January 30, 1962, J. C. Singleton, Jr., was riding as a guest passenger in a Chevrolet automobile owned by Allen F. McLain and operated by the appellant with the knowledge and permission of the owner, over and along U. S. Highway No. 701, in a negligent, careless, heedless, reckless, willful and wanton manner, and that he crossed over the center line of said highway and ran head on into a Chevrolet truck headed in the opposite direction and, as a proximate result of such operation, respondent's intestate received injuries from which he died. The answer of the appellant contained a general denial and, by way of further defense, alleged that the death of the respondent's intestate was caused and occasioned by his own contributory recklessness in the following particulars: (1) he was participating, aiding and abetting in an automobile race; (2) he failed to remove himself from the automobile when he had opportunity to do so, knowing that the driver thereof was about to participate in a race on the highway; (3) he failed to warn the driver of the automobile in which he was riding not to participate in a race on the highway; (4) he failed to keep a proper lookout for his own safety, and (5) he participated, aided and abetted in an automobile race on the public highway in violation of Section 46-356 of the Code.

This case came on trial at the 1963 May term of the Court of Common Pleas for Horry County, before the

Honorable James B. Morrison, Presiding Judge, and a jury, and resulted in a verdict in favor of the respondent, for actual and punitive damages.

During the course of the trial the appellant made a motion for a directed verdict in his favor and, after the verdict, for judgment *non obstante veredicto,* upon the ground that the only reasonable inference to be drawn from all of the testimony was that the respondent's intestate was guilty of contributory recklessness as a matter of law, in that he participated, aided and abetted in an automobile race which resulted in his death. These motions were refused and this appeal followed.

The only question for determination, as made by the single exception of the appellant, is whether the evidence shows that the respondent's intestate was guilty of contributory recklessness as a matter of law. The question of whether or not the deceased was guilty of contributory recklessness as a matter of law must be determined from the facts of the case, considering the testimony and the reasonable inferences to be drawn therefrom in the light most favorable to the respondent. The question as to contributory recklessness is usually for the determination by the jury, and becomes an issue of law for the court only where the conclusion that the guest was guilty of contributory recklessness is the only reasonable inference to be drawn from the evidence. *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335, and *Lynch v. Alexander,* 242 S. C. 208, 130 S. E. (2d) 563.

It is the contention of the respondent that his intestate was riding as a guest passenger in an automobile operated by the appellant. If the respondent's intestate was a guest passenger in said automobile, then the liability of the appellant is governed by Section 46-801 of the 1962 Code of Laws of South Carolina. Under this statute liability to a guest is restricted to cases where injury has resulted from either intentional or reckless misconduct of the owner

or operator of the motor vehicle. *Jackson v. Jackson,* 234 S. C. 291, 108 S. E. (2d) 86. A guest is barred from recovery for injuries caused by the host's reckless disregard of the safety of the guest, if knowing of the host's reckless misconduct and the danger involved to said guest, he recklessly exposes himself thereto. Where a guest voluntarily continues to ride with such a driver, the guest is reckless in the same degree as the driver, provided the guest has had the opportunity to remove himself from such danger by not continuing as a guest in the automobile so operated. *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335.

It .is the contention of the appellant, and such is ■ alleged in his answer, that the respondent's intestate was guilty of contributory recklessness in that he participated, aided and abetted in an automobile race, which resulted in his death, in violation of Section 46-356 of the Code, which provides that, "It shall be unlawful to engage in a motor vehicle race or contest for speed on any public road, street or highway in this State, or to aid, abet or assist in any manner whatsoever in any such race or contest." The aforesaid defense of contributory recklessness is an affirmative one and the burden of establishing it by the preponderance of the evidence was upon the appellant. *Hiott v. Bishop,* S. C., 137 S. E. (2d) 780. There is no question as to the fact that the appellant was operating the automobile he was driving at the time of the collision in question in a reckless manner and is liable to the respondent unless the deceased was guilty of contributory recklessness.

In *Boykin v. Bennett,* 253 N. C. 725, 118 S. E. (2d) 12, which was cited with approval in our case of *Skipper v. Hartley,* 242 S. C. 221, 130 S. E. (2d) 486, it was held that an injured passenger who had knowledge of an automobile race on a public highway and acquiesced in it cannot recover for his injuries. We quoted the following from the *Boykin case:*

"Those who participate are on a joint venture and are encouraging and inciting each other. The primary negligence

involved is the race itself. All who willfully participate in speed competition between motor vehicles on a public highway are jointly and concurrently negligent and, if damage to one not involved in the race proximately results from it, all participants are liable, regardless of which of the racing cars actually inflicts the injury, and regardless of the fact that the injured person was a passenger in one of the racing vehicles. Of course, if the injured passenger had knowledge of the race and acquiesced in it, he cannot recover. * * *"

It has been held in several cases that where one consents to ride in a motor vehicle which he knows is about to be used in racing on a public highway he is guilty of contributory, willful and wanton misconduct as a matter of law, which precludes his recovery for injuries sustained during the race. *Bugh v. Webb,* 231 Ark. 27, 328 S. W. (2d) 379, 84 A. L. R. (2d) 444, 445; *Bordelon v. Couvillion,* La. App. 130 So. (2d) 453; *Roberts v. King,* 102 Ga. App. 518, 116 S. E. (2d) 885, and *Cassidy v. Quisenberry,* Ky., 346 S. W. (2d) 304.

It appears from the testimony that Allen F. McLain, Howard Johnson and Bobby Faircloth each owned an automobile and that they, along with J. C. Singleton, Jr., Freddie W. Hughes, the appellant herein, and possibly others, saw each other at the Conway High School and then met again at the Bay Service Station on Main Street in Conway, and all parties agreed to engage in an automobile race on U. S. Highway 701. Allen McLain owned a 1958 Chevrolet automobile and riding with him during the race were Freddie W. Hughes and J. C. Singleton, Jr. Howard Johnson was driving a 1960 Chevrolet automobile with a boy by the name of Hendrix as a passenger, and Bobby Faircloth was driving a 1960 Ford automobile with one Bobby Hudson as a passenger. It is not questioned that these three automobiles engaged in racing upon the aforesaid highway from Conway to a point beyond the community of Adrian, a distance of about ten miles. There the automobiles were stopped. Allen McLain got out of his automobile and entered the Chevrolet

automobile of Howard Johnson. This left J. C. Singleton, Jr. and the appellant in the 1958 Chevrolet owned by McLain. The cars were turned around and the appellant drove Mc-Lain's Chevrolet automobile back towards Conway, with J. C. Singleton, Jr., riding with him. The appellant testified that young Singleton wanted to drive the car back to Conway but did not do so for the reason that he didn't have a driver's license. The appellant testified that the automobile driven by Faircloth left first and then the car driven by appellant followed. He caught up with the Faircloth car within a short distance and kept up with him but did not ever pass him. The appellant admitted that the Faircloth car and the car he was driving were traveling at a speed of about ninety miles per hour. The appellant testified that he attempted to pass the Faircloth car but had to drop back when he was meeting an oncoming car. When he again attempted to pass the Faircloth car he pulled into the left lane and met an automobile carrier. He said that in an effort to avoid colliding with this automobile carrier, he put on the brakes and his left front wheel caught and skidded sideways, resulting in a collision with the carrier, and causing the instant death of J. C. Singleton, Jr.

John C. Singleton, the respondent herein, testified that he had a conversation with the appellant after the death of his son. We quote such testimony:

"Q. Did he (Freddie Hughes) explain to you how it happened?

"A. I asked him if they were racing and he said no, he said they raced out there, but McLain got out of the car and went off and got in another, a Johnson boy's car, and said, 'One of you boys drive the car back, you, Freddie, or J. C.' So Freddie drove back and they were not racing, according to Freddie. He said nothing was said about racing back. They raced out there, according to what he said.

"Q. How did he say the wreck happened?

"A. He said he started to pass a car, I believe, and lost control of the car.

"Q. Did he say anything about a third car he was meeting?

"A. Well, he said it was a truck or a car or something that he seen when he started to pass probably and didn't have room to pass."

H. G. Holloman, a highway patrolman, investigated this collision and testified to the physical facts as he found them on the highway, and stated that there were 320 feet of skid marks leading up to the point of collision. He detailed a conversation which he had with the appellant about an hour after the accident, as follows:

"Q. Did you see the defendant Freddie Hughes?

"A. I saw him later at his house.

"Q. Did you talk to him?

"A. Yes, sir.

"Q. Did he make a statement to you?

"A. I had been told that he was racing and I asked him and he said, no, he was not racing, that he was driving 55 to 60 miles an hour.

"Q. The defendant Freddie Hughes said he was not racing at the time?

"A. Yes, sir, and he said he applied brakes when he saw he couldn't make it and he couldn't stop."

Littlejohn Blanton, the coroner of Horry County, stated that he went to the scene of the collision. His testimony of a conversation with the appellant was as follows:

"Q. Did you ever talk to Freddie Hughes about it?

"A. Yes, sir.

"Q. What did Freddie Hughes tell you?

"A. He said they had went up there and were coming back and they were not racing.

"Q. As coroner were you interested in the question as to that?

"A. Yes, sir.

"Q. And he told you what?

"A. That they were not racing coming back."

The appellant, in his testimony, admitted that there was an agreement between the several persons heretofore mentioned to engage in an automobile race on U. S. Highway No. 701. He admitted they raced on said highway for a distance of about ten miles and stopped beyond the community of Adrain. During this race, the appellant was riding, along with J. C. Singleton, Jr., in the Chevrolet automobile owned and operated by McLain. He says that when the cars were stopped beyond Adrian that McLain got out of his automobile and entered the automobile of Howard Johnson. He says that J. C. Singleton, Jr., could have gotten out of the car at the time they were stopped beyond Adrian but that Singleton did not indicate that he wanted to get out, even though he had the opportunity to do so. Upon cross examination of the appellant he gave the following testimony:

"Q. Freddie, when you got out to Adrian and Allen McLain got out of the car, the race was over, wasn't it?

"A. I don't know, sir.

"Q. Nothing was said about, that you recall about, racing back to town, was there?

"A. No, sir.

"Q. So J. C. had no reason to get out of the car then, did he? For all he knew, you were going to drive back to town carefully? You were a careful driver? For all he knew you were going to drive back to town carefully?

"A. I don't know.

"Q. What, sir?

"A. I don't know what he thought.

"Q. He had no reason to think anything else, did he?

"A. No, sir.

"Q. Now, sir, no question but that after this all of you talked to Patrolman Holloman?

"A. Yes, sir.

"Q. And you told him you were not racing?

"A. Yes, sir.

"Q. At the time?

"A. Yes, sir.

"Q. And you talked to Coroner Blanton?

"A. Yes, sir.

"Q. And you told him you were not racing at the time of the wreck?

"A. That's right.

"Q. And you talked to John C. Singleton, the father of J. C., and told him you weren't racing at the time?

"A. Yes, sir.

"Q. Did you tell the truth?

"A. Yes, sir."

The speed of the Faircloth automobile and the one driven by the appellant, on the return trip towards Conway, was variously estimated by several witnesses to be between 80 and 100 miles per hour. Bobby Faircloth and Bobby Hudson were called as witnesses and they admitted that they went out on Highway 701 for the purpose of racing. Faircloth stated "We raced up next Loris." Neither of these two witnesses, who had participated in the race, testified of any agreement to race on the return trip from beyond Adrian to Conway.

Considering all of the testimony in this case and the reasonable inferences to be drawn therefrom in the light most favorable to the respondent, we cannot conclude, as a matter of law, that the deceased was guilty of contributory recklessness by participating in an automobile race which resulted in his death. More than one reasonable inference can be drawn from the testimony. The conclusion is inevitable that there was an automobile race in which the deceased participated in going from Conway to Adrian. There is a reasonable inference that the automobile race in which the deceased had engaged ended at that time. This is particularly true in view of the statements made by appellant himself that "they were not racing" on the way back to Conway. This testimony raised the factual issue as to whether or not the race was over when the automobiles reached a point beyond Adrian. There was testimony from which the jury could have concluded that there was a race on the way back to Conway.

This factual dispute in the evidence was for determination by the trial jury. In view of the testimony and the reasonable inferences to be drawn therefrom, we think the trial Judge properly submitted to the jury the issue of whether or not respondent's intestate was guilty of contributory recklessness.

In several cases in which an automobile race was apparently over before the accident occurred, the Courts have approved the submission to the trier of fact of the issue of the contributory recklessness of the guest or passenger and has sustained the finding that he was free of such. *Lessen v. Allison,* 25 Ill. App. (2d) 395, 166 N. E. (2d) 806, and *Bybee v. Shanks,* Ky., 253 S. W. (2d) 257.

The trial Judge instructed the jury that if they should find that the deceased knew that the appellant was going to engage in a race with another automobile, and had the opportunity to get out of such automobile, then he would be guilty of contributory recklessness and could not recover. He further instructed the jury that should they find that the deceased rode in appellant's automobile when he knew he was about to engage in a second race, then, as a matter of law, the deceased would be guilty of contributory recklessness and the respondent could not recover. He further instructed the jury that if they should find from the testimony that an automobile race had in fact occurred but that such was over and the deceased lost his life solely as a result of the negligence, recklessness, willfulness and wantonness of the appellant, the respondent would be entitled to recover. This charge properly submitted the issues in this case to the jury for their determination.

It is our conclusion, therefore, that the trial Judge did not err in refusing the appellant's motion for a directed verdict and for judgment *non obstante veredicto.*

The exception of the appellant is overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J. and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.