18248

Walter W. HIOTT, Respondent, v. W. E. BISHOP, Appellant
(137 S. E. (2d) 780)

Messrs. *Hagood, Rivers & Young,* of Charleston, *for Appellant,*

Messrs. *Murdaugh, Eltzroth & Peters,* of Hampton, *for Respondent,*

August 4, 1964.

BUSSEY, Justice.

In this action to recover damages for injuries sustained in an automobile accident, the jury awarded plaintiff-respondent a verdict for actual damages in the amount of $5,000.00. The defendant-appellant, at appropriate times, made a motion for nonsuit, a motion for a directed verdict, and after the return of the verdict, a motion for judgment *non obstante veredicto* or for a new trial, in the alternative, all of which were denied.

The single question on appeal, as stated by defendant-appellant's counsel in the brief, is as follows:

"Did His Honor err in refusing the Appellant's motions for a nonsuit, a directed verdict and a Judgment notwithstanding the verdict upon the grounds that the Respondent was guilty of contributory negligence, recklessness and willfulness as a matter of law which would bar a recovery?"

It is unnecessary to recite authority for the oft-stated proposition that in the consideration of such motions, as well as in the consideration of an appeal from the refusal of the trial court to grant such motions, the evidence and all inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. We, accordingly, proceed to review the evidence in such light.

The plaintiff was, at the time of the accident on October 24, 1955, a deputy sheriff for Colleton County. One Ramsey was also a deputy sheriff. On the afternoon in question Ramsey was on duty and received a call to investigate an accident at New Hope Cross Roads, apparently an intersection of South Carolina Highway No. 63, some fifteen or sixteen miles west of the Town of Walterboro. The plaintiff at the time was off duty but was asked by Ramsey to accompany him to the scene of said accident, and they left the Colleton County Court House with Ramsey driving and plaintiff riding as a gratuitous passenger. Some two or three miles out of Walterboro on Highway 63 at the "Highway Department" Ramsey saw and notified one Cleland, a highway patrolman, of the accident and Cleland left that point ahead of Ramsey to go to the scene, with Ramsey following some two or three hundred yards behind Cleland.

At a point some fourteen miles west of Walterboro, near the intersection of a cross road, Cleland and Ramsey overtook the defendant who was proceeding in a westerly direction on said highway driving a pickup truck. Cleland sounded his siren and went on by the defendant without any mishap. As Ramsey pulled to the left of the highway for the purpose of passing the defendant, he did not sound a siren but did

sound his horn, and approximately simultaneously therewith the defendant, without giving any signal, made a left turn into the path of Ramsey's automobile for the purpose of entering his private driveway and stopped the truck on the pavement, completely blocking the eastbound lane of Highway 63. Ramsey, in this emergency, applied his brakes and cut back to his right, laying down skidmarks of some thirty-five feet before he reached the right shoulder following which the vehicle proceeded some forty feet to the end of a culvert underneath an intersecting county dirt road. Beyond this point the vehicle traveled an additional twenty-five to thirty feet across the county road and collided with another pickup truck, which was parked. These distances reflected that the vehicle driven by Ramsey traveled slightly more than one hundred feet from the time he observed the emergency until he collided with the pickup truck. The highway patrolman who investigated the accident testified that he could not tell whether the Ramsey vehicle was skidding or not after it left the pavement. There was no contact whatever with the pickup truck driven by the defendant.

There was evidence, including the testimony of the plaintiff himself, to the effect that Ramsey and Cleland were driving as much as sixty-five to seventy miles per hour as they proceeded down the highway, but, viewed in the light most favorable to the plaintiff, Ramsey's speed at the time he pulled out for the purpose of passing the defendant was sixty miles per hour.

The crux of defendant's argument here is the contention that the plaintiff, in the exercise of due care for his own safety, should have left the automobile driven by Ramsey at Sniders' Cross Roads, where it is contended he had an opportunity to do so. Just where Sniders' Cross Roads is in relation to either Walterboro or the scene of the accident does not appear in the record. Neither is there anything in the record to indicate the nature of the crossing at Sniders' with reference to whether or not a vehicle traveling on Highway 63 is or is not required to stop thereat. Mr. Cleland,

the highway patrolman, testified that he slowed down at Sniders' but did not recall whether he had made a full or complete stop. The evidence clearly reflects that on more than one occasion in the course of the journey, plaintiff asked Ramsey to reduce his speed because of Sunday afternoon traffic conditions. There is no suggestion in the record that plaintiff, or anyone else, thought that there was anything wrong with Ramsey's driving, other than plaintiff's complaints that his speed was excessive for Sunday afternoon traffic conditions. With reference to this phase of the case, Ramsey testified as follows:

"A. Well there was once or twice there he asked me to slow down.

\* \* \*

"Q. Did you stop at Sniders' Cross Roads?

"A. Yes, sir, I stopped there.

"Q. How long did you stop there?

"A. We stopped there for the road crosses there.

"Q. You came to a full stop there?

"A. Yes, sir, I did.

"Q. When was Mr. Hiott complaining to you about how fast you were driving?

"A. It was back this side of Sniders'.

"Q. Back this side of Sniders'?

"A. Yes, sir.

"Q. He told you not to drive so fast?

"A. Yes, sir.

"Q. And you came to a complete stop at Sniders'?

"A. I did, I came to a complete stop.

"Q. He didn't get out of the car, did he?

"A. No, sir, he didn't."

Testimony of the plaintiff included the following:

"Q. Now let me ask you this, sir, you say you asked to get out of the automobile?

"A. No, I didn't ask to get out of the automobile.

"Q. Did you ask him to slow down?

"A. I did.

"Q. That was before you got to Sniders'?

"A. And after we left Sniders'.

"Q. Before and after?

"A. I asked him a half a dozen times, I imagine."

It should be borne in mind that the defense of contributory negligence, recklessness or willfulness is an affirmative defense. Here the defendant adduced no evidence as to either the location or nature of Sniders' Cross Roads. The plaintiff was not asked whether Ramsey made a stop at Sniders', and, if he did so stop, as to why he did not leave the car if he had an opportunity to do so. Neither plaintiff nor Ramsey was asked any question as to whether, in response to plaintiff's protests, Ramsey either made any reply or changed his rate of speed. It is thus apparent the entire appeal here is based upon a circumstance which defendant's counsel did not deem to be worthy of even full cross examination, even though the burden of proof upon this point was upon the defendant.

Defendant relies upon the cases of *Nettles v. Your Ice Co.,* 191 S. C. 429, 4 S. E. (2d) 797, and *Augustine v. Christopoulo,* 196 S. C. 381, 13 S. E. (2d) 918, as supporting the contention that the evidence here shows plaintiff to have been guilty of contributory negligence, recklessness and willfulness as a matter of law. The facts in the cited cases are so far removed from the facts disclosed by the evidence in this case that they are clearly not in point factually.

The proper test by which to determine whether a passenger is guilty of negligence in failing to leave an automobile which is being improperly driven is set forth in the recent case of *Lynch v. Alexander,* 242 S. C. 208, 130 S. E. (2d) 563, in the following language:

"The test, therefore, is not whether a guest, knowing that the driver's conduct is improper, has a reasonable opportunity to leave the automobile, but whether a reasonable opportunity being afforded, a person in the exercise of ordinary care

would have done so under the circumstances. *Van Fleet v. Heyler,* 51 Cal. App. (2d) 719, 125 P. (2d) 586."

Even if plaintiff were negligent in remaining in the automobile, the question would still remain whether his negligence in that respect contributed to his injury as a proximate cause thereof. As was said in the case of *Wynn v. Rood,* 228 S. C. 577, 91 S. E. (2d) 276,

"But we think the question of whether any negligence in this respect contributed as a proximate cause of respondent's injury and damage was properly submitted to the jury. *Coney v. Cox,* 165 S. C. 26, 162 S. E. 596, * * *. It is firmly established in this jurisdiction that if the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence or wilfulness, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury.' *Harrison v. Atlantic Coast Line R. Co.,* 196 S. C. 259, 13 S. E. (2d) 137, 141."

Applying the foregoing principles to the facts as disclosed by the evidence in this case, we do not think that it could be properly held, as a matter of law, that the failure of the plaintiff to leave the vehicle amounted to even simple contributory negligence, let alone recklessness or willfulness.

From the time Ramsey left Walterboro until he reached the vicinity of the accident, the only improper conduct on his part, either complained of by the plaintiff or reflected by the evidence, was the fact that plaintiff evidently thought Ramsey was driving too fast for conditions. In the course of his complaints to Ramsey plaintiff referred to Sunday afternoon traffic as being heavy. Other than plaintiff's complaint to Ramsey, the record does not reflect anything about the actual traffic conditions. The weather was clear and dry. Exceeding the prima facie speed limit of 55 miles per hour is not negligence *per se*, Code Section 26-7, and whether or not one is negligent in so doing depends upon all of the attendant circumstances. Assuming that

any delict or delicts on the part of Ramsey contributed as a proximate cause to the unfortunate accident, it does not necessarily follow that his rate of speed, the only thing complained about by the plaintiff, was such a causative factor. In view of the conduct of the defendant as disclosed by the evidence, the evidence is clearly susceptible of the inference that the accident may very well have happened anyway, had Ramsey been traveling at a much lesser speed. In view of all of the circumstances, we think the judge properly submitted to the jury the issue of whether or not the plaintiff was guilty of any negligence, recklessness or willfulness, which contributed as a proximate cause to the accident and his resulting injuries.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.