18399

Daniel P. HICKS, Respondent, v. Marvin Doll HERRING, Appellant

(144 S. E. (2d) 151)

430

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Appellant,*

*Messrs. Gasque, Seals & Gasque,* of Marion, *for Respondent,*

September 16, 1965.

BRAILSFORD, Justice.

The plaintiff, Daniel P. Hicks, sustained serious and painful injuries while riding as a guest passenger in an automobile owned and operated by the defendant, Marvin Doll Herring, and brought this action for damages. The jury found for plaintiff $2,000.00 actual damages and $7,500.00 punitive damages and defendant has appealed. Plaintiff has adopted defendant's statement of the questions involved as follows:

"1. Was respondent guilty of contributory recklessness and heedlessness so as to bar recovery under the guest statute?

"2. Was the verdict improper?"

The nature of the first question, which challenges the refusal of the circuit court to direct a verdict for defendant upon the ground of contributory recklessness, requires a statement of the facts, viewing the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the verdict.

Hicks and Herring, both in their forties and lifelong acquaintances, got together in Marion, South Carolina, in the late afternoon of Saturday, February 8, 1964. They rode around Marion in Herring's automobile for a time. Then, they traveled about twenty-eight miles to a filling station near Johnsonville, where Hicks borrowed $5.00 from the manager and paid for some gas for Herring's car.

On the return trip, Hicks was injured when the Herring automobile collided with an automobile driven by one Marvin Bennett. Hicks elected to sue Herring only, and Bennett is not a party to the action.

Both vehicles were traveling in a northerly direction on a secondary highway with the Bennett car in the lead. As Herring rounded a curve, he saw the Bennett car, some three hundred feet ahead of him, traveling at a slow rate of speed. Bennett was preparing to make a left turn into a dirt road or drive, and, according to his testimony, had activated his left turn signal light when he was more than one hundred feet south of the drive. He saw the lights of Herring's car in his rear view mirror, and, thinking that he had time to clear the highway, turned his car toward the left, where it was struck by the Herring automobile and knocked off of the highway. Both vehicles were extensively damaged.

The complaint stated a case under the Guest Statute, Section 46-801, Code of 1962, alleging that Hicks' injuries

were caused by the recklessness and willfulness of Herring, *inter alia,* in driving at an excessive, dangerous and unlawful speed and in undertaking to pass the Bennett vehicle when he knew, or should have known, that it was making a left turn.

The answer pled the affirmative defense of contributory recklessness and willfulness, alleging that Hicks, after ample opportunity to observe the manner in which Herring was operating his automobile, acquiesced therein, and continued to ride with him without protest or objection.

Hicks testified that Herring drove at forty to forty-five miles per hour on the way to Johnsonville, but that he drove faster on the return trip. Hicks "was sorta scared," according to his testimony, because Herring "was driving a little too fast." He thought they might have a wreck if the speed was not reduced, but made no comment, objection or protest. He slumped down in the seat, placed his knees on the dashboard and refrained from looking at the road. The extent of his testimony as to the immediate circumstances of the collision is that he "looked up" when he "heard the tires holler" and saw "some lights and the side of an automobile" in the highway.

Marvin Bennett, the driver of the other automobile, convicted himself of poor judgment, at least, in undertaking to make a left turn across the highway, although he saw the headlights of Herring's rapidly approaching automobile in his rear view mirror. In the light of hindsight, he estimated that Herring was driving 75 or 80 miles per hour. However, he had scant opportunity to form an estimate as to speed and his opinion, apparently, was based upon the fact that he did not clear the highway, as he had expected and upon the force of the collision.

Two passengers in the Bennett car were examined as to Herring's speed. Neither would give an estimate in miles per hour, but both, also on limited opportunity for observation, expressed the opinion that his speed was in excess of 55 miles per hour.

Herring testified that he drove at 50 to 55 miles per hour to and from Johnsonville, except when special circumstances called for a reduced speed. He saw the tail-lights of the Bennett automobile near "where that road turns off there," but did not see a turn signal. Quoting further from his testimony:

"A. As I came up behind him, I seen he was running slow and I went to pull around him, and when I pulled off to go around, he just cut across in front of me. And I slammed on brakes and tried to miss him and I couldn't, and I pulled back to the right."

Bennett and the passengers in his automobile testified that after Bennett rounded the curve, he started the left turn signal and reduced his speed as he approached the road or driveway on his left. There is conflict in the testimony as to whether Bennett had actually begun his turn before Herring pulled into the left lane and started to pass him.

Under the testimony, more than one reasonable inference may be drawn as to the proximate cause of the collision; whether Herring was driving at an excessive speed and, if so, whether such speed was causally connected with Hicks' injuries. It is reasonably inferable that Herring could have avoided the collision by remaining in his right lane until Bennett completed his turn; that he was guilty of reckless misconduct in voluntarily undertaking to pass the turning automobile, of which movement a proper signal was being given; and that such misconduct was the proximate cause of Hicks' injuries. It is, of course, immaterial to the issue before us whether Bennett was also guilty of causal negligence or recklessness.

The emergency which culminated in the collision had its inception when Herring turned into the left lane and ran its course in a matter of moments. Hicks may not soundly be charged with recklessness, or even negligence, as a matter of law, for his failure to observe the

turning car in time to warn the driver against attempting to pass or to avoid the hazard by any means. The fact that Hicks thought that Herring was driving at an unreasonable speed and failed to protest, does not bar his recovery for injuries which, the jury could reasonably have found, were caused by an unrelated act of recklessness, which Hicks had no reason to anticipate and against which he had no opportunity to protect himself. In this respect, the case is akin to *Hiott v. Bishop,* 244 S. C. 524, 137 S. E. (2d) 780, in which the defense of contributory negligence and recklessness was raised against the plaintiff on the ground that he had made no effort to quit the automobile after the driver had ignored his rather numerous requests to slow down. We quote the following apposite excerpts from the opinion.

"Even if plaintiff were negligent in remaining in the automobile, the question would still remain whether his negligence in that respect contributed to his injury as a proximate cause thereof * * *.

"From the time Ramsey (driver of vehicle in which plaintiff was passenger) left Walterboro until he reached the vicinity of the accident, the only improper conduct on his part, either complained of by the plaintiff or reflected by the evidence, was the fact that plaintiff evidently thought Ramsey was driving too fast for conditions. (Interpolation ours) * * * Assuming that any delict or delicts on the part of Ramsey contributed as a proximate cause to the unfortunate accident, it does not necessarily follow that his rate of speed, the only thing complained about by the plaintiff, was such a causative factor. * * * (T)he evidence is clearly susceptible of the inference that the accident may very well have happened anyway, had Ramsey been traveling at a much lesser speed. In view of all the circumstances, we think the judge properly submitted to the jury the issue of whether or not the plaintiff was guilty of any negligence, recklessness or willfulness, which contributed as a proximate cause to the accident and his resulting injuries." 244 S. C. 530, 531, 137 S. E. (2d) 780, 783.

For a recent statement of principles defining the duties of a guest in an automobile which is being operated in a negligent or reckless manner, see *Lynch v. Alexander*, 242 S. C. 208, 130 S. E. (2d) 563.

We are satisfied that Herring was not entitled to the direction of a verdict on this ground.

The fifth exception, which has been argued under the second question, charges that the court erred in refusing to grant a new trial "in that the award for punitive damages was based upon caprice, prejudice and passion and does not have proper support in the record."

Under the theory on which the case was tried, the verdict for actual damages carried the implication that Herring operated his automobile in reckless disregard of the rights and safety of his guest passenger and of others lawfully using the highway. It was, therefore, the right and duty of the jury to assess punitive damages. *Davenport v. Woodside Cotton Mills Co.*, 225 S. C. 52, 80 S. E. (2d) 740.

No formula for the measurement of punitive damages, or of actual damages in personal injury cases, is possible, and the amount to be awarded is peculiarly within the judgment and discretion of the jury, subject to the supervisory power of the trial judge over jury verdicts. If the trial judge in the exercise of his discretion, is convinced that the amount awarded is overliberal, he has the authority and corresponding duty to reduce the verdict by order *nisi*. This court may reverse because of the claimed excessiveness of the verdict only in those extreme cases in which the amount assessed is "so shockingly excessive as manifestly to show" that the jury was actuated by caprice, passion or prejudice. *Aaron v. Hampton Motors, Inc.*, 240 S. C. 26, 124 S. E. (2d) 585; West's South Carolina Digest, Appeal and Error 1004.

Defendant does not argue that the total verdict of $9,500-.00 is out of proportion to the injuries sustained. In fact, he

cites the inadequacy of the award of actual damages as "some evidence" that the jury did not follow the testimony and the instructions of the court in arriving at the verdict. Relying upon certain circumstances which suggest that Herring is of modest means, the real brunt of counsel's argument is that the amount awarded as punitive damages "is completely out of reason" for a person of his financial status to pay.

While the wealth of a defendant is a relevant factor in assessing punitive damages, it is not necessarily controlling. There is "no requirement that the defendant be a man of means before the jury is justified in awarding punitive damages." *Norton v. Ewaskio,* 241 S. C. 557, 129 S. E. (2d) 517. In the cited case, this court refused to disturb a verdict for $310.00 actual damages and $3,440.00 punitive damages, although the defendant contended that his status as a monk showed that he was without means or property. A verdict for $15,000.00 punitive damages was sustained in *Morrow v. Evans,* 223 S. C. 288, 75 S. E. (2d) 598, where there was no evidence as to the means of the defendant, except that he was "a small operator in the trucking business." See also *Rogers v. Florence Printing Co.,* 233 S. C. 567, 106 S. E. (2d) 258, and *Charles v. Texas Co.,* 199 S. C. 156, 18 S. E. (2d) 719.

This court has recognized that in assessing punitive damages the main things to be considered are the character of the tort committed, the punishment which should be meted out therefor and the ability of the wrongdoer to pay. *Fennell v. Littlejohn,* 240 S. C. 189, 125 S. E. (2d) 408. We have also recognized that such damages are awarded not only as punishment and as a deterrent to the commission of like offenses, but as vindication of private right. *Davenport v. Woodside Cotton Mills Co.,* 225 S. C. 52, 80 S. E. (2d) 740. Therefore, such damages involve a compensatory aspect which we have long recognized. See *Watts v. South Bound R. Co.,* 60 S. C. 67, 38 S. E. 240, 242, quoted with approval in

*Rogers v. Florence Printing Co., supra,* 233 S. C. 567, 106 S. E. (2d) 258, 261.

While it was unusual for the jury to assess so large a proportion of the total verdict as punitive damages, we are not convinced that the verdict as a whole, or its components, in the light of the record, establishes that the jury acted capriciously or under any improper influence or motive. Compare *Morrow v. Evans, supra,* 223 S. C. 288, 75 S. E. (2d) 598 in which a verdict for $5,000.00 actual damages and $15,000.00 punitive damages for the wrongful death of a young Air Force sergeant, in an action brought for the benefit of his parents, was sustained against the claim that the award for punitive damages was excessive. The following comment by the court is aplicable here:

"(T)he jury awarded a relatively large amount of punitive damages as punishment of the appellant and for an example to others. Effort to deter reckless driving upon the highways, with the resulting heavy loss of human lives, is quite understandable. Prejudice and caprice are not apparent upon the record." 223 S. C. 297, 75 S. E. (2d) 602.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.