**PALMETTO FEDERAL SAVINGS BANK OF SOUTH CAROLINA,**
Plaintiff,

v.

**INDUSTRIAL VALLEY TITLE INSURANCE COMPANY,**
Defendant.

**Civ. A. No. 1:90–1599–1.**

United States District Court,
D. South Carolina,
Aiken Division.

Jan. 31, 1991.

Steven B. Licata, Columbia, S.C., for plaintiff.

Anthony A. Garcia, Columbia, S.C., for defendant.

## ORDER

HAWKINS, Chief Judge.

This motion is before the court on the Amended Report of the Special Master dated November 14, 1990 [1] in addition to the Defendant's Motion to Set Aside Entry of Default, which was filed on December 26, 1990.

## FACTUAL BACKGROUND

As a result of the allegations in the complaint, the testimony taken before Magistrate Carr, and the testimony at the hear-

---

**1.** The Magistrate filed a Special Masters Report on October 25, 1990; however, this report contained two inconsistent numbers which had to be clarified in the amended report.

ing before this court on January 10, 1991, this court finds the following:

1. On or about March 28, 1989, Walt Coffey executed a mortgage in favor of the plaintiff securing an indebtedness in the amount of $104,000 upon property known as Lot 37, Block A on a plat of Houndslake Section 7 in Aiken County (hereinafter the "property").

2. In connection with the closing upon the above-referenced mortgage, the plaintiff received from the defendant, Industrial Valley Title Insurance Company (hereinafter "Industrial"), through its authorized agent, Jack L. Schoer, a mortgagee's title insurance policy, bearing policy number 45–32–1313–02, (hereinafter the "policy"). Mr. Schoer had documents in his possession at the closing indicating that Walt Coffey was also known as James W. Coffey and that he did business as "Coffey Construction Company". *See Plaintiff's Exhibit* 3.

3. Under the policy, subject to certain exclusions, exceptions, conditions and stipulations stated therein, the defendant insured the plaintiff against loss or damage sustained or incurred by reasons of:

a. any defect in, lien or encumbrance (against the property); and

b. the priority of any lien or encumbrance over the lien of the insured mortgage.

4. Although unknown to the plaintiff at the time, the property, on March 28, 1989, was subject to certain tax liens filed by the Internal Revenue Service on February 13, 1986, May 15, 1986, June 7, 1986, September 18, 1986, November 17, 1988 and certain state tax liens filed by the South Carolina Tax Commission on or about February 11, 1986, and certain tax executions filed by the South Carolina Employment Security Commission on November 14, 1985 and September 12, 1986, which liens had priority over the mortgage of the plaintiff.

5. On or about February 5, 1990, the plaintiff received a Notice of Public Auction Sale indicating that the property had been seized and was to be sold at public auction at 9:00 a.m. on February 15, 1990 for the purpose of satisfying the above-referenced federal tax liens (hereinafter the "notice").

6. The Notice was the plaintiff's first notice of any problem with or defect in title to the property.

7. Upon contact with the defendant's agent, Jack Schoer, the plaintiff was informed that Mr. Schoer was aware of the outstanding tax liens against the property and that the defendant was aware of the liens.

8. Despite Notice and demand by the plaintiff, the defendant failed and refused to take the necessary action to remove the federal tax liens as encumbrances against the property and to prevent the sale of the property under the terms of the notice.

9. As a result of the failure to act by the defendant, the plaintiff, at 4:30 p.m. on February 14, 1990 paid to the Internal Revenue Service the sum of $75,398.26 to satisfy the federal tax liens which were prior to its mortgage and to stop the sale of the property.

10. The above payment represented payment of duly filed federal tax liens against the property which pre-dated and which had priority over the mortgage of the plaintiff. The state tax liens remained as liens against the property.

11. The payment by the plaintiff was necessary to preserve its mortgage position against the property which would have been lost had the payment not been made.

12. Subsequent to the above payments, the plaintiff made 3 separate written demands for payment which were introduced in the record before this court and included a formal proof of loss.

13. According to the provisions of the policy, payment thereunder was due thirty (30) days after the extent of loss and liability have been definitely fixed in accordance with the policy. This date would have been April 30, 1990, at the latest, as the plaintiff made written claim for payment on March 3, 1990.

14. The plaintiff has complied with and performed all conditions precedent to the obligations of the defendant under the policy.

15. The plaintiff has incurred a total of $84,866.48 in actual damages consisting of the $75,398.26 paid on February 14, 1990, interest thereupon through the date of hearing at the rate provided for in the note and mortgage affected hereby and the necessary amounts to satisfy the still outstanding state tax liens.

16. From the time that the plaintiff first contacted the defendant herein regarding the claim which is the subject of this action, the defendant exhibited disregard for the rights of its policyholder and made no effort to address this claim from the date it accrued until this action was filed. The defendant's desire to obtain its recoupment from a malpractice carrier for its closing agent before making payment to the plaintiff is one which is not provided for by its own policy. *See Plaintiff's Exhibit* 9. The policy carries with it the primary obligation to pay an insured loss when incurred. The ability to recoup the loss incurred from a third party has nothing to do with that obligation. The defendant was obligated to render the performance which the plaintiff seeks.

17. As stated by counsel for the defendant, during the time period when the complaint was pending, the defendant was in the process of reorganizing its legal department as well as preparing to remove itself from the South Carolina insurance market. As a result, the complaint "just fell through the cracks."

### Procedural Background

Procedurally, the plaintiff filed this action in United States District Court on July 11, 1990. The Summons and Complaint in the action were served on the Honorable John G. Richards, Chief Insurance Commissioner on July 13, 1990. By statute, as Chief Insurance Commissioner, Mr. Richards is the agent for service on Industrial.

As stipulated to by the parties, by July 19, 1990, the complaint, having been copied and forwarded by the defendant, was in the possession of two South Carolina attorneys, one of whom was the current counsel for the defendant. On August 7, 1990, the plaintiff moved for entry of default and, on August 7, 1990, the Clerk of Court entered default. An evidentiary hearing was held before Magistrate Robert S. Carr on September 20, 1990. The defendant was not present. As a result of the hearing, the Magistrate filed the Special Masters Report on October 29, 1990 and the Amended Special Masters Report followed on November 14, 1990. The reports recommended actual damages and, based on the defendant's conduct, punitive damages as well.

On November 6, 1990, counsel for the defense filed his "initial" appearance in the case as well as an answer to the complaint on behalf of the defendant. Although the clerk's office had previously entered default, the answer was mistakenly filed. In addition, though stamped November 6, 1990, the answer was mysteriously dated September 29, 1990. Counsel for the defense offered no other explanation for this time discrepancy other than the organizational problems with which the defendant was apparently more occupied.

On December 7, 1990, after the Amended Special Masters Report had been forwarded to this court for a determination of punitive damages and entry of judgment, counsel for the defendant was informed, by telephone, that the answer had been mistakenly filed and that the case was in default. On December 26, 1990, the defendant filed a motion to set aside default which set forth five grounds as justifications for providing relief. These grounds were as follows: (1) that the defendant filed their Answer and the same was accepted for filing; (2) the defendant had no notice of an Entry of Default at the time the Answer was submitted; (3) the defendant received no communication from the plaintiff's counsel regarding a motion or affidavit in support of an entry of default; (4) defendant was advised by this court of the entry of default more than thirty days after the acceptance and filing of the answer; and (5) the defendant has meritorious defenses to the action.

### ANALYSIS

I. *Setting Aside the Entry of Default*

A. The Standard of Analysis

Under Fed.R.Civ.P. 55(c), "for good cause shown, the court may set aside an

entry of default and, if judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b) provides six grounds for relief from judgment, the most pertinent one to this case being "mistake, inadvertence, surprise, or excusable neglect." Thus, a distinction is drawn between the standards for relief from default which require "good cause shown" and relief from default judgment, which is governed by the parameters of Rule 60(b).

Although a distinction is made between these two types of relief in the rules, often the procedural posture of cases requires courts to deal with these two rules in tandem. As a result, the recent case law in this area in the Fourth Circuit has set forth standards of relief for cases involving motions under both Rule 55(c) and Rule 60(b), which has muddled the distinction between these two rules. *See, e.g., United States v. Moradi,* 673 F.2d 725 (4th Cir.1982). Although prior cases deal with motions arising solely under Rule 55(c), *see Nelson v. Coleman Co.,* 41 F.R.D. 7 (D.S.C.1966), the more recent cases, though they represent cases involving both Rule 55(c) and 60(b), have adopted a more liberal approach to relief. *See, e.g., Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808 (4th Cir.1988). Therefore, in light of the more recent decisions in this area of the law, we feel that it is important that we set forth the standard which we are applying for a motion for relief arising solely under Fed.R.Civ.P. 55(c).

■ At the outset, it is well established that "although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi,* 673 F.2d 725, 727 (4th Cir.1982) (citations omitted). Indeed, the decision to set aside an entry of default is "committed to the sound discretion of the trial court" and should only be disturbed upon a finding of an abuse of discretion. *See Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951, 954 (4th Cir.1987).

In an earlier case in this district, which dealt exclusively with a motion under Rule 55(c), Judge Simons ruled that "the party in default must show that he has a meritorious defense in the action and that there is reasonable explanation or excuse to call for the application of the rule." *Nelson v. Coleman Company,* 41 F.R.D. 7, 9 (D.S.C. 1966). One year later, in *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.,* 383 F.2d 249, 251 (4th Cir. 1967), the Fourth Circuit held that "[g]enerally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."

The facts of *Consolidated Masonry* bear mentioning because they are analogous to the case at hand. In *Consolidated Masonry,* the Fourth Circuit held that it was not an abuse of discretion for the trial court to deny the defendant's motion to set aside default where the defendant had waited two and a half months before filing their motion to set aside. *Consolidated Masonry,* 383 F.2d at 251. The case involved a contract dispute in which jurisdiction was based on diversity. The Defendant was a Maryland corporation and process had been served on its registered agent in Virginia. The defendant never answered the complaint and default and judgment were entered.

Two and a half months after the default, the defendant moved to have the default set aside. The trial court granted the motion to set aside the default judgment but denied the defendant's motion to set aside the default and referred the matter to a Special Master to hear evidence from both the plaintiff and the defendant on the plaintiff's claim. Final judgment was entered against the plaintiff on certain claims following these hearings before the Special Master. On appeal, counsel for the defendant, like counsel here, claimed that he was never apprised of the entry of default by the plaintiff's attorney. Nevertheless, the court denied the defendant's motion to set aside the entry of default on the grounds that the defendant had not acted promptly

in waiting two and a half months to respond to the entry of default. *Id.*

The more recent cases in this area, although they deal with cases arising under both Rule 55(c) and 60(b), have broadened the factors to be considered when handling an entry of default judgment and have taken a more liberal posture than that expressed in *Consolidated Masonry.*

In *Moradi,* the Fourth Circuit clarified the holding in *Consolidated Masonry* and held that "relief from a judgment of default should be granted when the defaulting party acts with reasonable promptness in seeking to set aside the default and tenders a meritorious defense." *Moradi,* 673 F.2d at 727. Further, "reasonable promptness" must be judged in light of the facts and circumstances of each case. In addition, the existence of a "meritorious defense" may be established by "a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Id.*

■ Finally, the court set forth several other factors which should also be considered when determining a default issue: "the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Id.* at 728; *Lolatchy,* 816 F.2d at 953. In setting aside the entry of default judgment, the *Moradi* court was persuaded, in large part, by the defendant's lack of personal responsibility for the delay. *Moradi,* 673 F.2d at 728; *Lolatchy,* 816 F.2d at 953. It should

be noted, however, that the holding in *Moradi,* though making reference to Fed.R. Civ.P. 55(c), *Moradi,* 673 F.2d at 727, couched its opinion in terms of awarding relief from default judgment under Fed.R. Civ.P. 60(b) and not relief from an entry of default under Fed.R.Civ.P. 55(c).[2] *Id.* at 728.

Next followed the case of *Park Corp. v. Lexington Ins. Co.,* 812 F.2d 894, 897 (4th Cir.1987) in which the Fourth Circuit denied relief from a default judgment. In *Park,* an insurance company, Park, failed to file an answer to the plaintiff's complaint, which was based on a failure to defend or provide coverage on a liability policy. As the basis for their relief, Park claimed that the summons and complaint, though received in the mail room, had disappeared. Thus, an answer was not filed. The Fourth Circuit upheld the trial court's denial of the motion to set aside based on the unexplained disappearance of the complaint stating "to hold otherwise would be to allow defaulting defendants to escape the consequences of their inaction simply by asserting that the legal process to which they failed to respond was lost." *Park,* 812 F.2d at 897.

Although the court in *Park* failed to use the factors set forth in *Moradi,* the two opinions were later harmonized in *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808 (4th Cir.1988). *Augusta* involved a breach of contract claim in which the defendant's attorney had failed to file an answer to the complaint in

---

2. The Fourth Circuit's opinion in *Lolatchy,* which reaffirms the holding of *Moradi,* also dealt with motions under both rules 55(c) and 60(b) and is indicative of the overlap of standards which has arisen in this area of the law. *Lolatchy,* 816 F.2d at 952–54. Although the final paragraphs of the opinion speak in terms of Rule 55(c), the appeal of the entry of default judgment was also before the court. The holding of the court in *Lolatchy* must be viewed as dealing with Rule 55(c) only to the extent that Rule 55(c) makes reference to Rule 60(b) for handling those cases in which judgment has already been entered. To interpret this opinion otherwise would eliminate any distinction between the standard for relief under Rule 55(c) and Rule 60(b). Clearly this was not the intent of the drafters of these code sections.

As the court stated in *Broglie v. Mackay–Smith,* 75 F.R.D. 739, 742 (D.W.Va.1977):

The rules make a clear distinction between the criteria which govern the granting of relief from an *entry of default* and those governing relief from *default judgment.* . . . The more rigorous standards governing relief under Rule 60(b) are consistent with the policy of protecting the finality of judgment. When the issue is one of whether to set aside an entry of default so that the "good cause" standard of Rule 55(c) is applicable, it is not absolutely necessary that the neglect or oversight offered as a reason for the delay in filing a responsive pleading be excusable.

*Id.* (emphasis in original).

the belief that negotiations were ongoing. Although the trial court had denied the defendant's motion for relief, the Fourth Circuit applied the *Moradi* factors and overturned the trial court's decision citing the trial court's failure to distinguish between the fault of the defendant and the fault of the defendant's attorney. *Id.* at 811. Comparing the results in *Moradi* and *Park*, the court stated:

> Although *Park* does not cite or discuss *Moradi*, the results of these two cases are entirely consistent when one considers that in *Park* the party alone was responsible for the default, whereas in *Moradi* the attorney alone was responsible for the default. While *Moradi* does not mention "excusable neglect" or any of the other grounds for relief under Rule 60(b), its import is that, when the party is blameless, his attorney's negligence qualifies as a "mistake" or as "excusable neglect" under Rule 60(b)(1). Moreover, both cases require a movant to act in a timely fashion, to avoid unfair prejudice to the non-movant, and to proffer a meritorious defense in order to obtain relief.
>
> This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside. When the party is at fault, the latter interests dominate and the party must adequately defend its conduct in order to show excusable neglect.

*Augusta Fiberglass Coatings, Inc.*, 843 F.2d at 811 (citations omitted).

We have detailed the progression of these cases because, to the best of our knowledge, the case before us is one of the first cases to present an issue of setting aside solely an entry of default since the formulation of the standards in *Moradi* and *Augusta Fiberglass*. Thus, although these cases deal with motions under Rule 60(b), the more liberal approach taken by these courts and their influence on cases arising under Rule 55(c) cannot be denied. Having set forth these cases, we return to our initial inquiry as to what factors should be considered in determining "good cause" under Fed.R.Civ.P. 55(c).

As stated earlier, it is clear that different standards govern setting aside an entry of default and setting aside a default judgment. *Supra,* note 2. It is also clear that respect for the finality of judgment dictates that a heavier burden be borne by the defaulting party who is attempting to set aside a default judgment than that which must be borne by a party which is merely in default, but which has not had judgment entered. *Id.*

■ Based on the foregoing, this court believes that a party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default and provide underlying facts in support of a claim of a meritorious defense. Certainly, nothing in the *Moradi* or *Augusta Fiberglass Coatings* cases altered these considerations.

■ In addition, we believe that the factors set forth in *Moradi*, though they were applied to a Rule 60(b) motion, also provide useful guidelines in a motion to set aside an entry of default. As stated before, these factors are: "the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Moradi*, 673 F.2d at 728. We should, however, address several matters regarding the implementation of these factors.

First, although we realize that this establishes a similar standard for setting aside both entries of default and default judgments, we believe that the manner in which these factors are treated, which is in the discretion of the trial court, can yield a standard which is more burdensome for those seeking to set aside default judgment and less burdensome for those attempting to set aside an entry of default. As the court stated in *Broglie*, "when ... the 'good cause' standard of Rule 55(c) is applicable, it is not absolutely necessary that the neglect or oversight offered as a rea-

son for the delay in filing a responsive pleading be excusable." *Broglie v. Mac-Kay–Smith,* 75 F.R.D. 739, 742 (W.D.Va. 1977). Likewise, courts applying the *Moradi* factors to motions to set aside entries of default can use these standards flexibly to ensure that those parties who warrant relief receive relief "from the onerous consequences of defaults." *Tolson v. Hodge,* 411 F.2d 123, 130 (4th Cir.1969).

In addition, we should note that of the four factors set forth in *Moradi,* the greatest weight has been placed on determining whether the defaulting party or counsel for the defaulting party bears responsibility for the delay. *Moradi,* 673 F.2d at 728; *Augusta Fiberglass Coatings,* 843 F.2d at 811; *Lolatchy,* 816 F.2d at 953. We, too, feel that responsibility is an important factor because this acknowledges the precept that some party must offer the cause of, or excuse for, the delay. *See Lolatchy,* 816 F.2d at 952; *See Consolidated Masonry,* 383 F.2d at 251; *See Broglie,* 75 F.R.D. at 742; *See Nelson,* 41 F.R.D. at 9.

▇ In summation, we believe that a party seeking relief from an entry of default under Fed.R.Civ.P. 55(c) must be prompt in their response to the entry of default and must tender a meritorious defense. In addition, the court should consider the factors set forth in *Moradi,* namely: "the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic" in determining whether "good cause" exists sufficient to warrant relief. *Moradi* at 728. Particular attention should be paid to whether the defaulting party or their counsel bears the responsibility for delay. Courts should be more inclined toward relief in those cases in which the attorney is at fault as opposed to those cases in which the defaulting party is to blame. *Augusta Fiberglass Coatings,* 843 F.2d at 811. Finally, the court should be mindful that there is a preference for resolution of disputes via a trial on the merits. *Moradi,* 673 F.2d at 727.

**B. Applying the Standard**

▇ The promptness with which the defendant acted in this case once he was informed of the entry of default is not at issue. " 'Reasonable promptness' must be judged in light of the facts and circumstances of each case," *Moradi,* 673 F.2d at 727, and this court is satisfied that the defendant did respond within an appropriate time frame.

As for a meritorious defense, the evidence before the court is less clear; however, we cannot say that the defendant has alleged a meritorious defense. The gravamen of the defendant's defense is that the plaintiff knew that Walt Coffey and James W. Coffey were the same person. Further, the defendant alleges that the plaintiffs knew there were outstanding tax liens on the property before applying for the title insurance. Based on these allegations, the defendant asserts that the defendant would not have entered into the title insurance contract had they been informed by the plaintiff about the tax liens on the property.

Although counsel for the defendant did not characterize it as such, the claim is clearly one of fraud in the inducement. To "establish a claim of defense of fraud in the inducement, a party must prove, among other elements of the tort: (1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." *Darby v. Waterboggan of Myrtle Beach, Inc.,* 288 S.C. 579, 344 S.E.2d 153, 155 (S.C.App.1986).

As stated earlier, the defendant need only make "a presentation or proffer of evidence, which, if believed, would permit the Court or the jury to find for the defaulting party." *Moradi,* 673 F.2d at 727. The defendant, however, has failed to meet this burden. The defendant's answer, though mistakenly filed, merely alleges that the plaintiff "negligently, wilfully, wantonly, and/or recklessly withheld relevant and vital information to the Defendant so as to induce the Defendant to enter into

a contract which the Defendant would not otherwise have entered, but for the actions of the Plaintiff." Yet, nothing was produced before the court to indicate that the plaintiff made any type of false representation. Rather, the evidence presented before the court indicated that Mr. Schoer, the defendant's agent at the closing, had documents before him indicating that Walt Coffey was in fact James W. Coffey. *See Plaintiff's Exhibit* 3. Further, the defendant presented no evidence which would indicate that the plaintiff intended to deceive him nor that the defendant had a right to rely on any representation made by the plaintiff. In short, this court finds it difficult to fathom how an individual searching titles could overlook the possibility that James W. Coffey and Walt Coffey might be the same individual, especially given the information which was before the defendant's agent. *See Plaintiff's Exhibit* 3.

Looking to the factors mentioned in *Moradi* the defendant's actions prior to plaintiff's filing of the complaint may indicate a pattern of, or propensity for, delay. Nevertheless, we cannot say that there has been a history of dilatory actions. We hasten to add, however, that it would be difficult to exhibit a history of delay in an action when, as here, the defendant has refused to answer the complaint.

As for any prejudice which might have been caused by the defendant's actions, there does not appear to be a substantial amount on the record at this time. As contemplated by the court in *Lolatchy,* the events which rise to the level of prejudice include missing or dead witnesses or other events which affect the evidence which may be presented at trial. *Lolatchy,* 816 F.2d at 952. Although the plaintiff has certainly been inconvenienced by the defendant's dilatory tactics, there is no evidence that the ability of the plaintiff to argue his complaint has been impeded by the delay.

Although the aforementioned factors from *Moradi* would suggest a favorable outcome for the defendant, the personal responsibility of the defendant themselves for the delay warrants a denial of the defendant's motion. The evidence before the court clearly indicates that the defendants themselves are to blame for the delay. At best, the delay may be attributed to oversight inasmuch as their attention was ostensibly being spent on the restructuring of their legal department and their impending departure from South Carolina.

At worst, the defendant's delay may be viewed as a calculated tactic to defer payment to the plaintiffs pending a determination of the damages by the Magistrate at which time the defendants would base their response accordingly. The Magistrate's recommendation for punitive damages, however, necessitated the filing of the answer immediately following the issuance of the Magistrate's report. Although counsel for the defense objected to such a characterization at the hearing, this court was not persuaded by the defendant's assertion that a complaint which had been in the possession of two South Carolina attorneys since July 19, 1990 simply "fell through the cracks" and was coincidentally found days after the Magistrate recommended punitive damages. In either case, the explanations offered by the defendants for the delay in filing are not sufficient to justify setting aside the entry of default.

The facts of this case are analogous to the facts of *Consolidated Masonry,* 383 F.2d at 251 as well as *Park,* 812 F.2d at 895–97, which were summarized previously. The entry of default in this case was filed on August 7, 1990. Like the defendant in *Consolidated Masonry,* the defendant in this case should have been aware that his answer was not timely filed inasmuch as process had been served on the Chief Insurance Commissioner, who is the registered agent for the defendant in the state, on July 13, 1990.

Although the answer to the complaint was dated September 29, 1990, which would still have been after the entry of default, the answer was not filed until November 6, 1990, which is well outside of the 20 day time frame of Fed.R.Civ.P. 4. Yet, when asked for the cause of the delay, the defendant's explanation was that attention to the complaint had been lost in the orga-

nizational restructuring which was apparently taking place in the home office of Industrial. When pressed further by this court as to whether the delay resulted from the inattention of his client, counsel for the defense stated that he could not argue that question.

The holding in *Park* is clear that such neglect will not warrant setting aside a default judgment. *Park*, 812 F.2d at 897. Although *Park* involved a motion under Fed.R.Civ.P. 60(b), the caveat against setting aside default judgment based on the mere loss of the complaint is certainly applicable to a motion to set aside an entry of default under Fed.R.Civ.P. 55(c). This position is also consistent with the holding of *Augusta Fiberglass Coatings* regarding the distinction which must be made when a party is at fault and as opposed to when an attorney is at fault. In the former case, the interest in the "judicial system's need for finality and efficiency in litigation" is controlling. *Augusta Fiberglass Coatings*, 843 F.2d at 811.

The defendant also claims and makes much of the fact that they did not have any notice of the entry of default. First, although the promptness with which the defendant responds to the entry of default is important, "good cause" should also address why the defendant was tardy in responding to the plaintiff's complaint. *See supra.*

Second, although notice is required for parties making appearances before an entry of default *judgment* is entered under Fed.R.Civ.P. 55(b)(2), notice of the entry of default is not required by the rules. *See* Fed.R.Civ.P. 55(a). Indeed, if "the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk, upon request of the plaintiff and upon affidavit of the amount due shall enter judgment...." Fed.R.Civ.P. 55(b)(1).

Thirdly, the defendant has been given the opportunity to present this court with a "reasonable explanation or excuse" to set aside the default under Fed.R.Civ.P. 55(c), *Nelson*, 41 F.R.D. at 9, and was placed on notice of the application for entry of default judgment via the hearing before this court on January 10, 1990. As the court stated in *Nelson*, "[w]hen a man has a case in court, the best thing he can do is attend to it ... [and] give it that amount of attention which [one] of ordinary prudence usually gives to his important business." *Id.* at 10 *citing Brown v. Nix*, 208 S.C. 230, 37 S.E.2d 579, 580 (1946). The defendant has given this court absolutely no reason to depart from this precept and has failed to establish "good cause" for setting the entry of default aside.

Finally, we note that the court has considered the possibility of sanctions short of default. The *Lolatchy* court placed great emphasis on the importance of exploring lesser sanctions than default when a party has unnecessarily impeded the progress of a case. *See Lolatchy*, 816 F.2d at 953–54. As suggested by the court in *Lolatchy*, the court may charge the attorney responsible for the delay with the costs and expenses attendant to the delay. *Id.* at 953. In this case, as opposed to *Lolatchy*, the defendant, not counsel for the defendant is to blame for delay. In such a case, the "judicial system's need for finality and efficiency in litigation should prevail." *Augusta Fiberglass Coatings*, 843 F.2d at 811.

Further, we are also persuaded by a portion of Judge Wilkinson's dissent in *Lolatchy:*

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order....
>
> But [this sanction] must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remains undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case.

But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other districts.

*Lolatchy*, 816 F.2d at 956 (Wilkinson, J., dissenting) *quoting National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (emphasis in original).

Although *National Hockey League* dealt with a failure to obey an order to compel discovery, Judge Wilkinson believed, as this court does, that the parallel with Fed. R.Civ.P. 55(c) is unmistakable. Were we to grant defendant's motion, we would be sending a very clear message to litigants that disregard for the filing periods in this district will be allowed upon the mere assertion that the complaint "fell through the cracks" of an organization. The tendency to delay is prevalent among a wide array of litigants. It is particularly disturbing when unnecessary delays are caused by insurance companies which are not only affected with the public interest, but have the legal resources to deal with litigation in a swift and efficient manner. Therefore, for these reasons, and based on the factors discussed above, denial of the defendant's motion to set aside default is the appropriate sanction.

## II. *Judgment on the Issue of Damages*

■ Having addressed the defendant's motion to set aside the entry of default, we now turn to the Special Master's report recommending punitive damages in addition to the actual damages of $75,398.26, plus accrued interest from February 19, 1990 which increases at the rate of $24.79 per day. Since jurisdiction in this case is based on diversity, the court looks to the law of South Carolina for guidance. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff pursued recovery under its tort cause of action for bad faith refusal to pay first party benefits as approved by *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983). It is clear that the complaint adequately pleads facts, which are supported by evidence and made part

of the record, sufficient to sustain recovery under this theory.

■ In addition to actual damages, a plaintiff is entitled to recover punitive damages under the *Nichols* theory if it can be demonstrated that "insurer's actions were wilful or in reckless disregard of the insured's rights." *Id.* 306 S.E.2d at 619. In reaching their decision, the court in *Nichols* stated:

> The public policy reasons for recognizing this cause of action are plentiful. The insurance business is affected with a public interest. An insured ordinarily possesses no bargaining power and no means of protecting himself from the kind of treatment of which Respondent complained.... Absent the threat of a tort action, the insurance company can, with complete impunity, deny any claim they wish, whether valid or not. During the ensuing period of litigation following such a denial, the insurance company has the benefit of profiting on the use of the insured's money.

*Id.*

In South Carolina, a court must look to a variety of factors to determine whether punitive damages are justified. Among these factors, a court must consider "the character of the tort committed, the punishment which should be meted out therefor, and the ability of the wrongdoer to pay." *Hicks v. Herring*, 246 S.C. 429, 144 S.E.2d 151, 155 (1965). Further, "such damages are awarded not only as punishment and as a deterrent to the commission of like offenses, but as vindication of private right." *Id.* (citations omitted).

Over the years, the South Carolina Supreme Court has consistently upheld punitive damage awards of three to ten times actual damages and sometime gone much higher. For example, in an early case to address the question, the court affirmed an award of only $2.50 actual damages and $1,014.00 punitive damages. *Beaudrot v. Southern Railway Co.*, 69 S.C. 160, 48 S.E. 106 (1904). Other representative cases which have allowed a wide range of punitive damages are: *Bradley v. Metropoli-*

tan Life Insurance Co., 162 S.C. 303, 160 S.E. 721 (1931) ($180.00 actual, $2,000.00 punitive based on breach of contract accompanied by fraudulent act); *Eaddy v. Greensboro–Fayetteville Bus Lines, Inc.*, 191 S.C. 538, 5 S.E.2d 281 (1939) ($100.00 actual, $400.00 punitive based on breach of duty by common carrier); *Morrow v. Evans*, 223 S.C. 288, 75 S.E.2d 598 (1953) ($5,000.00 actual, $15,000.00 punitive for an auto collision); *Weatherford v. Home Finance Co.*, 225 S.C. 313, 82 S.E.2d 196 (1954) ($15.00 actual, $2,000.00 punitive based on fraud); *Hall v. Walters*, 226 S.C. 430, 85 S.E.2d 729 (1955) ($1,000.00 actual, $25,000.00 punitive for assault); *Norton v. Ewaskio*, 241 S.C. 557, 129 S.E.2d 517 (1963) ($310.00 actual, $3,440.00 punitive from traffic accident); *Thompson v. Home Security Life Insurance*, 271 S.C. 54, 244 S.E.2d 533 (1978) ($433.00 actual, $12,500.00 punitive for breach of insurance contract accompanied by fraudulent act). As indicated by these precedents, the relationship between actual and punitive damages in South Carolina has always been a flexible one: "The appellant attempts to place a definite mathematical rule upon the assessment of punitive damages as to the proportion which the same should bear to actual damages. There is no reason for such rule and the same does not exist in South Carolina." *Eaddy*, 5 S.E.2d at 283.

This court finds that the actions of the defendant were certainly in reckless disregard of the insured's rights and were precisely the type of delay tactic with which the *Nichols* court was concerned. Not only has the title insurance company benefitted by the use of the fees which the plaintiff paid for the insurance, but the plaintiff has been forced to expend funds out of pocket to cover an obligation which should rightfully have been paid by the defendants. As mentioned earlier, it is completely incomprehensible to this court that an individual checking titles would not at least recognize the possibility that Walt Coffey and James W. Coffey were one and the same person, especially with the information that was before Mr. Schoer. As the principal for their agent Schoer, Industrial Valley was responsible for this error.

*West v. Service Life and Health Ins. Co.*, 220 S.C. 198, 66 S.E.2d 816 (1951). Based on the record before us and given the defendant's recalcitrance in allowing the plaintiff's recovery prior to the complaint, this court can come to no other conclusion but that the delay in filing was merely another attempt on the part of the defendants to prolong their payment to the plaintiff.

As for the ability of the defendant to pay the punitive damages award, the records before the court indicate that the defendant had a surplus regarding policyholders of $5,855,055 as reported in Industrial's annual statement dated December 31, 1989 and which was filed with the State Insurance Commission. Based on this information and the nature of the tort as described above, this court finds that an award of punitive damages in the amount of $100,000 is consistent with the decision in *Nichols*. This award will be over and above the attorneys fees which the plaintiff has had to incur in litigating this matter. Therefore, based on the foregoing it is

ORDERED, that the defendant's motion to set aside the entry of default is, and the same is hereby, denied. It is

ORDERED FURTHER, that the plaintiff be, and the same is hereby, awarded $75,398.26 (Seventy Five Thousand Three Hundred Ninety Eight and Twenty Six Hundredths Dollars) in compensatory damages plus interest at the rate of $24.79 per day from February 19, 1990 until the date that such amount has been paid. It is

ORDERED FURTHER, that the defendant pay to the plaintiff the sum of $100,000 (One Hundred Thousand Dollars) in punitive damages in addition to the reasonable attorney's fees associated with litigating the plaintiff's claim.

AND IT IS SO ORDERED.